JAMES EARL HARRIS, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 28351

July 15, 1997 942 P.2d 151

*Michael Specchio,* Public Defender and *Mary Lou Wilson,*
Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City;
*Richard A. Gammick,* District Attorney and *Terrence P.
McCarthy,* Deputy District Attorney, Washoe County, for
Respondent.

## OPINION

*Per Curiam:*

On October 16, 1995, the State of Nevada charged appellant James Earl Harris ("Harris") with indecent exposure, a gross misdemeanor, and using a controlled substance, a felony. The charges stemmed from allegations that Harris unlawfully made an indecent or obscene exposure to his ten-year-old daughter ("minor daughter"), at their apartment in Reno. The minor daughter allegedly told her brother ("minor son") that Harris had "done something to her."

Shortly thereafter, Alice Thompson ("Alice"), Harris's wife, came home from work. The minor daughter told Alice that

"daddy just tried to do it to me." Officers arrived a few minutes later and apprehended Harris. Harris later submitted to a blood test which revealed cocaine metabolite in his system.

At a December 14, 1995 hearing on a motion to confirm the trial date, held before Judge Agosti, Deputy Public Defender Maizie Pusich ("Pusich"), Harris's court-appointed counsel, indicated that Harris was not satisfied with her representation and wished to replace her. Pusich also stated to the court that Harris could not retain another public defender, but would have to retain an outside lawyer. The district court notified Harris that his decision to employ new counsel would probably not be considered sufficient grounds to grant a continuance. After Harris stated that he understood, the court confirmed the trial date for January 8, 1996.

On January 3, 1996, Harris and Pusich again appeared before Judge Agosti to confirm the trial date. Harris had been unable to retain different counsel because, in his words, he did not have sufficient resources to do so. Pusich indicated that Harris wanted to represent himself. Thereafter, the court canvassed Harris about his capacity and ability to proceed in proper person. The court then allowed Harris to waive counsel.

On January 8 and 9, 1996, Harris's trial took place. After the prosecution's case in chief, Harris called the minor son and Alice, whom the State had subpoenaed but not called. Both witnesses corroborated the minor daughter's version of events. Harris then testified on his own behalf. Harris also gave a short closing argument.

The jury returned guilty verdicts on both counts. The district court sentenced Harris to serve two concurrent terms of one year. Harris now appeals.

## DISCUSSION

Harris contends that the district court erred by allowing him to proceed in proper person because he did not unequivocally declare that he wanted to represent himself. The State contends that the district court's canvass shows that Harris competently, knowingly, unequivocally, and intelligently waived his right to counsel.

Waiver of the right to counsel must be made knowingly and intelligently. Faretta v. California, 422 U.S. 806, 835 (1975). " 'The test of a valid waiver is not whether specific warnings or advisements were given but whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.' " Arajakis v. State, 108 Nev. 976, 980, 843 P.2d

800, 802-03 (1992) (quoting People v. Bloom, 774 P.2d 698 (Cal. 1989)). The relevant assessment examines the accused's competence to choose self-representation, not his ability to adequately defend himself. Godinez v. Moran, 509 U.S. 389, 400 (1993). This court will give deference to the district court's determination that the defendant waived his or her right to counsel with a full understanding of the disadvantages and clear comprehension of the attendant risks. Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996).

Recently promulgated Supreme Court Rule 253 ("SCR 253") sets forth guidelines suggesting areas of examination and warnings that should be given by district courts during a canvass regarding waiver of the right to counsel. Although SCR 253 came into effect on March 31, 1997, and thus has no direct application to the case at bar, it appears that the district court's canvass of Harris fully complied with those guidelines.

The record shows that the district court made a detailed inquiry into Harris's background and notified him of the dangers of self-representation. The court inquired, *inter alia,* into Harris's reasons for wishing to proceed in proper person, his educational background, his past and present mental health, his previous legal experience, and whether Harris was currently under the influence of drugs or alcohol. Harris replied in an articulate fashion that he had a high school education; had no particular training in the law, but had sat through two jury trials—once as a defendant, once as a juror; was employed; could read and write "quite well"; was mentally stable and sober; and was dissatisfied with his lack of "communication" with his appointed counsel, Pusich.

The district court explained that it was generally considered foolish for a person to represent himself, that the court would give no special assistance to Harris during trial, that he would be expected to follow the rules of procedure and evidence, and that he would be held to the same standards as an attorney. At the court's request, the district attorney explained to Harris the elements of the crimes charged, the burden of proof, the potential penalties, and the fact that he could not claim ineffective assistance of counsel on appeal if he represented himself. Pusich then noted that she had previously explained to Harris, in general terms, possible defenses to the crimes charged. While Harris intimated that he would have accepted appointed counsel if he believed that the public defender would truly represent his interests, he unequivocally indicated that he accepted "the consequences of having to be my own defense in view of the circumstances I related to [the court]."

In sum, the record shows that the district court's canvass was extensive and proper, that Harris wished to proceed in proper person, and that he was competent to choose to do so. *See Graves,* 112 Nev. at 124-26, 912 P.2d at 238-39; *Arajakis,* 108 Nev. at 980, 843 P.2d at 802-03. Accordingly, we conclude that Harris knowingly and voluntarily waived his right to counsel and that the district court did not err in permitting him to proceed in proper person. The district court's canvass and factual findings were sufficient to satisfy *Faretta* and its progeny.

Harris contends that his request to represent himself was untimely, and hence invalid, because it occurred only five days before trial.

District courts have discretion to deny self-representation requests when they are made in an untimely fashion. *See* Lyons v. State, 106 Nev. 438, 443, 796 P.2d 210, 213 (1990). However, Harris's argument that district courts must deny untimely requests for self-representation lacks merit. A defendant has the constitutional right to refuse the service of counsel, so long as he does so knowingly and intelligently. *Id.* Denial of that right is per se harmful. *Id.* Accordingly, we conclude that Harris's contention is without merit.

Harris also contends that the court did not advise him of all of his constitutional rights, and therefore his waiver was ineffective. Specifically, he contends that the court failed to notify him of his right to subpoena witnesses in his defense.

A district court canvassing a defendant who requests to proceed in proper person must make the accused aware of " 'facts essential to a broad understanding of the whole matter.' " Scott v. State, 110 Nev. 622, 626, 877 P.2d 503, 506 (quoting Cohen v. State, 97 Nev. 166, 168, 625 P.2d 1170, 1171 (1981)). However, the district court certainly does not have an obligation to give the defendant specific warnings or advisements about every rule or procedure which may be applicable. *Cf. Arajakis,* 108 Nev. at 980, 843 P.2d at 802-03; *see also Graves,* 112 Nev. at 125, 912 P.2d at 238; SCR 253. Thus, while defendants representing themselves have a right to utilize compulsory process, *see Faretta,* 422 U.S. at 818, the district court has no duty to inform defendants of their right to subpoena witnesses on their own behalf. In any event, as Harris was able to examine the minor son and Alice, and there is no indication in the record or appellate briefs that Harris wished to call other witnesses, he was not prejudiced. We conclude that Harris's contention lacks merit.

Next, Harris contends that the district court should have considered giving him a different deputy public defender, other appointed counsel, or other competent counsel to advise him during trial, rather than giving him the sole option of keeping Pusich or representing himself.

After accepting a defendant's request to proceed in proper person, the trial court must meet its obligation to ensure that the accused receives a fair trial. Hollander v. State, 82 Nev. 345, 352, 418 P.2d 802, 806 (1966). The district court thus is afforded discretion to appoint competent counsel to give the accused meaningful assistance in the presentation of the defense or to aid in saving a record for appeal. *See generally* Bishop v. State, 95 Nev. 511, 597 P.2d 273 (1979) ("standby counsel" appointed by district court in death penalty case); Junior v. State, 91 Nev. 439, 537 P.2d 1204 (1975) (advisory counsel assisted defendant).

However, a defendant does not have a constitutional right to advisory counsel. United States v. Kienenberger, 13 F.3d 1354, 1356 (9th Cir. 1994); *see also* Wheby v. Warden, 95 Nev. 567, 569, 598 P.2d 1152, 1153 (1970) (defendant has no right to have his case presented in court both by himself and by counsel acting at the same time or alternatively at the defendant's pleasure), *overruled on other grounds,* Keys v. State, 104 Nev. 736, 766 P.2d 270 (1988). Accordingly, the district court has no duty to appoint advisory counsel when a defendant elects to represent himself. *See* United States v. Patterson, 42 F.3d 246, 248 (5th Cir. 1994). District courts have no duty to inform defendants that advisory counsel might be available in some circumstances.

The district court had no duty to advise Harris of the potential availability of advisory counsel or to appoint advisory or standby counsel to represent him. The record shows that the district court met its obligation to ensure Harris a fair trial. Thus, Harris's contention lacks merit.

We conclude that Harris's remaining contentions are without merit, and thus we affirm his convictions and sentences.