Opinion by Judge BERZON; Concurrence by Judge FERNANDEZ.
OPINION
BERZON, Circuit Judge:
Armis Arrendondo represented himself against theft charges at trial and was sentenced under Nevada’s habitual criminal statute, Nev.Rev.Stat. § 207.010, to two concurrent life sentences, with the possibility of parole after ten years. He contested his continued detention via a petition for habeas corpus under 28 U.S.C. § 2254, and now appeals the district court’s (1) denial, on the merits, of his claim of invalid waiver of his right to counsel and (2) dismissal as unexhausted of his claim of denial of the use of compulsory process. Compelled by the statutory limits on our habeas corpus review of state convictions, we affirm.
I.
In September 2003, a Las Vegas homeowner returned from a vacation in Colorado to find his residence ransacked, several of his possessions missing, and his Winnebago motor home gone from its garage. *1126 The ensuing investigation led authorities to Arrendondo. Nevada indicted him on one count of possession of a stolen vehicle and another of possession of stolen property. See Nev.Rev.Stat. §§ 205.273, 205.275.
At Arrendondo’s arraignment, he pleaded not guilty. In the months that followed, several public defenders represented Arrendondo in pre-trial proceedings. Public defender Drew Christensen represented him at arraignment. Several weeks later, at a hearing on Arrendondo’s motion for release, public defender Delbert Martin entered an appearance. Public defender Victor Austin was then appointed to represent Arrendondo, but at several subsequent calendar calls public defender Lynn Avants appeared instead of Austin.
Arrendondo grew dissatisfied with the quality of representation provided him by the public defender’s office. At the second of the two calendar calls at which Avants appeared, Arrendondo expressed frustration that he had not met or been represented in court by Austin, his appointed lawyer. The court ordered Austin “to be prepared for [t]rial or another Public Defender will be assigned.”
Approximately two and a half months after his arraignment, Arrendondo filed a handwritten Motion to Dismiss Counsel and Appointment of Alternate Counsel. In it, he alleged that his appointed attorney, “Victor Osten [sic],” had “refus[ed] or fail[ed] to communicate and/or visit” him in jail; had routinely missed court dates; and had “failed to assign an investigator to gather information.” Arrendondo concluded by stating that “clearly, a conflict of interest now exist[s] between counsel/client (defendant).” At a subsequent hearing on the matter, Austin explained that Arrendondo had not complied with Austin’s request to reveal the names and addresses of potential witnesses, a representation Arrendondo disputed. It was this failure to furnish names and addresses, Austin continued, that explained his unwillingness to appoint an investigator. Arrendondo, in turn, demanded “competent counsel to represent me because it just seems like he’s absent-minded. I tell him one thing and two minutes later he forgets what I told him.”
The court denied Arrendondo’s motion for new counsel. Nonetheless, for reasons not apparent from the record, public defender Kristen M. Lynch replaced Austin as Arrendondo’s attorney.
Over half a year later Arrendondo filed a second handwritten Motion to Dismiss Counsel. That motion alleged that Lynch had missed a court date; had “fail[ed] to file pretrial motions, writs, or petitions” in support of his case; and had “refus[ed] or fail[ed] to communicate and/or visit” Arre-nondo in jail. It continued:
Lynch (Public Defender) and others like her are only interested in railroading the defendant and/or having the defendant sign a plea agreement. There is definitely a conflict of interest here. Its [sic] like having a nemesis in charge of ensuring that justice is done. The only fair remedy is to have a state appointed attorney assigned to this case, instead of a public defender.
The motion also sought to permit Arren-dondo to proceed pro se.
At a hearing held in response to Arren-dondo’s motion, at which public defender Lynn Avants appeared rather than Lynch, the court canvassed Arrendondo to determine whether he sought to waive his right to counsel and, if so, whether he was doing so knowingly, intelligently, and voluntarily:
Court:.... Do you want to represent yourself or not?
Defendant: I believe, um, I would need standby counsel.
*1127 Court: We don’t do that, in most instances. This certainly wouldn’t be one. Maybe in a murder case I might concede. I don’t know. I don’t typically do that.
Defendant: When it comes to posing viable objections or proper arguments, you know, an attorney who’s been practicing every day, um, obviously would do a much better job than myself.
Court: Do you want to let them do their job or do it yourself?
Defendant: I believe I can prove my innocence. With the assistance of counsel, of course, it will be much easier.
Court: Do you want to go ahead and let your attorney assist you?
Defendant: Will he be representing me?
Court: Are you the attorney of record?
Mr. Avants: No. It’s Ms. Lynch.
Court: It’s Ms. Lynch.
Defendant: I cannot. No way.
Court: Let’s get on with it here. Do you want to represent yourself?
Defendant: Absolutely.
Court: You don’t have to say anything more. You’ve made your decision?
Defendant: Between incompetent counsel or self-representation? •
Court: We don’t have the whole day to spend here.
Court: You prefer to take the disadvantage of not having full knowledge of the law and letting some prosecutor perhaps take advantage of you in that regard. Is that your thinking?
Defendant: This is a situation — it’s between incompetent counsel, the ineffective assistance of counsel.
Court: We’re not getting into that. I want to know if you want to represent yourself. I don’t care why. I want you to realize you’re up against a lot of problems here.
Defendant: I have no other choice, apparently.
The court advised Arrendondo that proceeding pro se was “unwise”; that he would “have to adhere to the same procedural rules as the lawyers”; that he could not complain of ineffective assistance of counsel on appeal; that the state would be represented by an experienced prosecutor; that he would not receive special library privileges at the jail; that his legal ignorance would “give the prosecutor an advantage”; and that, if he testified, he would have difficulty arguing his own credibility before the jury. Arrendondo acknowledged that he understood each of these statements.
The court then outlined the elements of the crimes of which Arrendondo was accused and inquired as to Arrendondo’s knowledge of possible defenses. The court also reviewed the possible penalties carried by a conviction:
Court: You understand the penalties that are possible here?
Defendant: I believe it carries one to six.
Court: Possession of stolen vehicle is one to 10 years in prison and as much as a $10,000 fine. Possession of stolen property over $2,500 is one to 10 years in prison and a $10,000 fine. If it’s between 250 and 2,500 dollars, I believe it’s a C felony, which is one to five, and a $10,000 fine. If it’s under $250, it’s a misdemeanor. Do you understand that?
Defendant: Yes.
The court then found that Arrendondo had “knowingly and freely and voluntarily waiv[ed]” his right to counsel and granted his motion to proceed pro se.
*1128 Before trial, Arrendondo filed a Notice of Alibi Witnesses, listing twelve individuals who would allegedly testify on his behalf. Although Arrendondo included the addresses and telephone numbers of seven of these witnesses, he failed to provide full contact information for the rest.
At trial, at least two of Arrendondo’s witnesses did not appear. Arrendondo did not have their “subpoena returns” because the subpoenas “went out a little late.” As he explained, “I wanted to schedule this— it was Thursday, and I had no idea we were going to trial today.... I thought I was just picking the jury today.” At 5:15 PM that day, the court adjourned. It instructed Arrendondo to produce his absent witnesses at 10:00 AM the following morning. Those witnesses did not appear at the appointed hour.
The jury convicted Arrendondo on both counts. Days later, the state filed a Notice of Intent to Seek Punishment as a Habitual Criminal under Nev.Rev.Stat. § 207.010, on the basis of four prior convictions. For a felon previously convicted of three felonies, § 207.010(b) prescribes any of three possible punishments, the most severe of which is life without the possibility of parole. The court sentenced Arrendondo to two concurrent life sentences, with the possibility of parole after ten years.
Arrendondo appealed to the Nevada Supreme Court. That court ordered appointment of counsel, and Marvin L. Lon-gabaugh was selected to represent Arren-dondo.
In his briefs before the Nevada Supreme Court, Arrendondo’s counsel pressed three claims, two of which are relevant here: He argued that (1) “the State’s failure to advise the district court that Arrendondo might be charged as a habitual criminal made Arrendondo’s waiver of counsel invalid”; and (2) the trial court denied Arrendondo “adequate time to produce his trial witnesses.”
After Longabaugh filed Arrendondo’s opening brief but before receiving the state’s answering brief, Arrendondo wrote a letter to Longabaugh expressing concerns about his appeal. That letter is not included in the record, but Longabaugh’s written response is. In it, Longabaugh explains that the appeal
focuses on errors that the district court made during your case. If we were to present these constitutional issues at this time, you would be waiving your ability to appeal these issues through your habeas corpus petition. Consequently, we did not address these possible federal constitutional violations because we want to preserve your right to argue them when and if you seek habeas relief.
While the appeal was pending, Arren-dondo filed a hand-written, pro se Motion to Dismiss Counsel and Appointment of Alternate Counsel. In it, he alleged that Longabaugh had failed to raise several claims. Included among these grievances was the assertion that Longabaugh had refused to substantiate Arrendondo’s inability to produce witnesses by appending stamped subpoenas as exhibits to the appellate briefs. The Nevada Supreme Court denied the motion.
Three months later, the Nevada Supreme Court issued its decision on Arren-dondo’s appeal. It affirmed the validity of his waiver of counsel. “Although the district court indicated that Arrendondo would face a maximum of twenty years if convicted, rather than life,” the court reasoned, “the otherwise extensive canvass of Arrendondo demonstrated that he understood the dangers and disadvantages of self-representation.” The Nevada Supreme Court also noted that when Arren- *1129 dondo waived his right to counsel, the state had not yet filed notice that it would seek sentencing under Nevada’s habitual criminal statute. Separately, the court affirmed that Arrendondo had been granted adequate time at trial to produce his witnesses.
Without first filing a state post-conviction petition, Arrendondo filed a federal habeas petition. That petition was dismissed without prejudice for reasons unexplained in the record. This second pro se federal habeas petition followed. In it, Arrendondo argued that his waiver of counsel was invalid, because it was neither knowing and intelligent nor voluntary. He also asserted denial of his right to compulsory process.
The district court dismissed Arrendon-do’s denial of compulsory process claim on exhaustion grounds. Because of the unex-hausted claims, the district court declared the petition “mixed” and thus subject to dismissal, see Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), but offered Arrendondo an opportunity to cure the problem prior to dismissal. Ar-rendondo thereupon accepted the district court’s invitation to abandon the compulsory process claim and proceeded on his remaining ground for relief, that his waiver of counsel was invalid. In a later ruling, the district court denied that waiver claim on the merits, reasoning that Arren-dondo’s “waiver was knowing and intelligent” and that the Nevada Supreme Court’s ruling “was not contrary to United States Supreme Court precedent.”
This appeal followed. A Certificate of Appealability was granted on both the validity of Arrendondo’s waiver of counsel and the determination that Arrendondo’s compulsory process claim was unexhaust-ed. We ordered counsel appointed for the appeal.
II.
A criminal defendant may waive his Sixth Amendment right “to have the Assistance of Counsel for his defence,” U.S. Const, amend. VI, only if he acts “knowingly and intelligently,” with full awareness of the “dangers and disadvantages of self-representation.” Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); accord Patterson v. Illinois, 487 U.S. 285, 292, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). The Faretta doctrine polices the border between “two correlative and mutually exclusive Sixth Amendment rights: the right to have counsel, on one hand', and .the right to refuse counsel and represent [oneself], on the other.” United States v. Gerritsen, 571 F.3d 1001, 1007 (9th Cir.2009).
Arrendondo argues that his waiver of counsel was neither “knowing and intelligent” nor voluntary. Because the Supreme Court of Nevada has already rejected Arrendondo’s claim on the merits, the deferential standard codified at 28 U.S.C. § 2254(d)(1) governs our review of Arren-dondo’s petition.[1] Arrendondo thus must demonstrate that the Nevada Supreme Court’s decision (1) was “contrary to” clearly' established federal law as determined by the United States Supreme Court or (2) “involved an unreasonable application of such law.” Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). We review de novo the district court’s application of this standard. *1130 See, e.g., Smith v. Swarbhout, 742 F.3d 885, 892 (9th Cir.2014).
A.
To prove that his waiver of counsel was not “knowing and intelligent,” Arrendondo advances a pair of related arguments. He first attributes error to the trial court’s failure to discharge its “duty to ensure that an accused who sought to proceed pro se was advised of the range of possible punishments.” Elsewhere, Arrendondo switches tacks, asserting that his colloquy with the trial court demonstrates that he “lacked the knowledge that he was facing a sentence of life in prison if convicted.” Neither argument entitles Arrendondo to habeas relief, but the latter comes closer to the mark than the former.
1. As to Arrendondo’s first argument: No clearly established Supreme Court case law requires trial courts to apprise defendants in any particular form of the risks of proceeding to trial pro se. Under the governing Supreme Court precedents, so long as “the record ... establishes] that ‘[the defendant] knows what he is doing and his choice is made with eyes open,’ ” the waiver of counsel is valid. Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). The Supreme Court has accordingly declined to “prescriben any formula or script to be read to a defendant who states that he elects to proceed without counsel.” Iowa v. Tovar, 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004).
In direct appeals, this Court has noted that “it is ‘only the rare case in which an adequate waiver will be found on the record in the absence of a specific inquiry by the trial judge,’ ” Gerritsen, 571 F.3d at 1008 (quoting United States v. Balough, 820 F.2d 1485, 1488 (9th Cir.1987)), and that “ ‘[w]e prefer trial courts to simplify our review by explaining the risks of self-representation to the accused,’ ” id. (quoting United States v. Kimmel, 672 F.2d 720, 722 (9th Cir.1982)). Still, “the failure of the district court to engage in a colloquy with the defendant cannot itself be reversible error.... ‘[Because the test concerns what the accused understood rather than what the court said or understood, explanations are not required.’ ” Id. (quoting Kimmel, 672 F.2d at 722).
In sum, Arrendondo’s assertion that the Constitution requires particularized warnings when a defendant seeks to represent himself is not supported by established Supreme Court law. Under 28 U.S.C. § 2254(d)(1), we must deny the request for habeas relief insofar as it is premised on that assertion.
2. Arrendondo next argues that, at the time of his waiver, he “simply did not have an adequate appreciation of the length of prison time that he would face upon conviction.” The Supreme Court has clearly established that a defendant must have a general understanding of the potential penalties of conviction before waiving counsel to render that waiver valid. See infra Part II.A.2.a. It has not, however, determined whether a defendant must understand the potential penal consequences of sentencing enhancements that have not yet been charged. See infra Part II.A.2.b. And, we conclude, refusing to require such an understanding is not an unreasonable application of what little the Supreme Court has said on the matter. See id. Consequently, Arrendondo’s ignorance of the possibility that he could be sentenced as a habitual criminal if the prosecution later filed notice that it would seek such a *1131 penalty cannot be a basis for habeas relief under § 2254(d)(1).
a. Faretta, 422 U.S. at 835, 95 S.Ct. 2525, held that, “to represent himself [at trial], the accused must ‘knowingly and intelligently’ forgo” the right to counsel. To qualify as knowing and intelligent, the Court continued, such a decision must be made with awareness “of the dangers - and disadvantages of self-representation.” Id.
Faretta itself did not specifically address the defendant’s awareness of his possible punishments. But Tovar, 541 U.S. 77, 124 S.Ct. 1379, did. That case explained that a defendant, before waiving his right to counsel for the purpose of entering a guilty plea, must be aware “of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.” Id. at 81, 124 S.Ct. 1379 (emphasis added); see also Von Moltke v. Gillies, 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948) (plurality opinion) (stating that a valid waiver of counsel for the purpose of entering a guilty plea requires “an apprehension of ... the range of allowable punishments,” among other matters).[2]
The requirement recounted in Tovar complements the requisites for a valid waiver of the right to counsel described in Faretta.[3] As the common law of torts long ago recognized, the rational calculation of risk requires multiplying the magnitude of a threatened loss by the probability of its occurrence. See United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir.1947). Tovar supplies the first of these terms; Faretta, the second. By requiring awareness of the range of possible penalties, Tovar ensures that defendants understand the magnitude of the loss they face. Faretta^ meanwhile, emphasizes awareness of “the dangers and disadvantages of self-representation ” — that is, the specific, tactical liabilities of going to trial without trained counsel. Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (emphasis added). That knowledge relates to the probability that a defendant will' be convicted, not the consequences of conviction. In short, the requirements of Faretta and Tovar enrich one another. Taken together, they outline the minimum necessary knowledge for a defendant to calculate knowingly and intelligently the risk of proceeding to trial pro se.
*1132 Tovar’s statement concerning the defendant’s knowledge of possible punishments is clearly established Supreme Court law, and was at the time of the Court’s decision on the merits. Tovar stated: “We hold.... [that t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.” Tovar, 541 U.S. at 81, 124 S.Ct. 1379 (emphases added). An express holding is clearly established Supreme Court law for purposes of 28 U.S.C. § 2254(d)(1). See, e.g., White v. Woodall, — U.S. -, 134 S.Ct. 1697, 1702, 188 L.Ed.2d 698 (2014). Moreover, the defendant’s understanding of his potential punishment was included in Tovar’s reasoning; the opinion affirmatively highlighted the fact that the defendant “has never claimed that he did not fully understand ... the range of punishment for the crime....” 541 U.S. at 92, 124 S.Ct. 1379.
Tovar, unlike this case, concerned an uncounseled guilty plea, not a defendant who represented himself at trial. But To-var addressed the relationship between waiver at the plea phase and waiver at trial, stating that at the plea stage, “a less searching or formal colloquy” is needed to gauge the defendant’s knowledge than is necessary with regard to waiver of trial counsel. Tovar, 541 U.S. at 89, 124 S.Ct. 1379 (emphasis added) (citing Patterson, 487 U.S. at 299, 108 S.Ct. 2389). This difference is “not because pretrial proceedings are ‘less important’ than trial, but because, at that stage, ‘the full dangers and disadvantages of self-representation ... are less substantial and more obvious to an accused than they are at trial.’ ” Tovar, 541 U.S. at 90, 124 S.Ct. 1379 (emphasis added) (quoting Patterson, 487 U.S. at 299, 108 S.Ct. 2389).
The risk calculation involved in determining whether to represent oneself at trial differs from that at the plea stage with regard to the number of tactical dangers of proceeding without counsel — that is, the probability that proceeding without counsel will affect the outcome. But there is no difference at all in the two circumstances with regard to the other component of risk calculation — namely, knowledge of the magnitude of the risk faced. And, given the Court’s express declaration that the requirements for a guilty plea waiver of counsel are less rigorous than those applicable to a trial waiver, excising any of Tovar’s requirements in the trial context would be an unreasonable interpretation of clearly established Supreme Court law.
b. Here, the trial court informed Arrendondo of the maximum penalties carried by conviction for the charged offenses, possession of a stolen vehicle and possession of stolen property, and Arren-dondo confirmed that he understood the court’s statement. See Nev.Rev.Stat. §§ 205.273(4), 205.275(2)(c). We generally presume that defendants seeking to waive their right to counsel understand what they are told regarding that choice. See, e.g., Patterson, 487 U.S. at 296, 108 S.Ct. 2389; United States v. Mohawk, 20 F.3d 1480, 1484 (9th Cir.1994). In holding valid Arrendondo’s waiver of counsel, the Nevada Supreme Court noted, correctly, that Arrendondo’s understanding of his potential penal exposure accurately reflected the charging documents before the trial court at the time of his waiver.
Arrendondo contests that conclusion on the ground that he was unaware of the potential for a greater penal exposure under Nevada’s habitual criminal statute, Nev.Rev.Stat. § 207.010, with which he had not yet been charged when he waived *1133 his right to counsel.[4] And he maintains that without knowledge of that exposure, his waiver of trial counsel was not knowing and intelligent. The strictures of 28 U.S.C. § 2254(d)(1) preclude us from granting habeas corpus relief on that ground.
i. Clearly established Supreme Court law does not require a defendant waiving’ his right to counsel to understand the potential application of recidivist sentencing énhancements that had not yet been charged, and were not required to have been charged, at the time of the waiver. Where sentencing enhancements are based solely on prior convictions, current Supreme Court case law does not require that the convictions be charged before conviction, tried to a jury, or found beyond a reasonable doubt. See Almendarez-Torres v. United States, 523 U.S. 224, 227-28, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); see also United States v. Pacheco-Zepeda, 234 F.3d 411, 414 (9th Cir.2000). And the Supreme Court has never held that a defendant’s knowledge of “the range of allowable punishments,” Tovar, 541 U.S. at 81, 124 S.Ct. 1379, required for a valid waiver of counsel, includes awareness of enhanced sentencing options premised on such prior convictions, the application of which can only result from an act of prose-cutorial discretion that may be exercised after trial and conviction. Tovar does not address the question, nor does any subsequent Supreme Court decision. “Therefore, no ‘specific legal rule’ on this issue has been ‘squarely established by th[e] Court.’” John-Charles v. California, 646 F.3d 1243, 1249 (9th Cir.2011) (alteration in original) (quoting Richter, 131 S.Ct. at 786). The Nevada Supreme Court’s rejection of Arrendondo’s knowing and voluntary waiver argument, to the extent it rested- -on the circumstance that the. enhancements had not been charged at the time the waiver occurred, was thus not contrary to clearly established Supreme Court law. See 28 U.S.C. § 2254(d)(1).
ii. Section 2254(d)(1) permits ha-beas relief not only where a state court decision is inconsistent with clearly established Supreme Court law, but also where its decision “involved an unreasonable application of[ ] clearly established ... law.” “[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since ‘a general standard’ from [the Supreme] Court’s cases can supply such law,” Marshall v. Rodgers, — U.S. -, 133 S.Ct. 1446, 1449, 185 L.Ed.2d 540 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)), if the “unreasonable application” standard is met.
A state court applies a .clearly established standard unreasonably only if no “reasonable interpretation of the control *1134 ling [Supreme Court] standard” can “support [the state court’s] legal ruling.” Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). So, when evaluating the reasonableness of a state court’s application of a general standard, we must defer to any “principled reason for the state court to distinguish between the case before it and Supreme Court precedent.” Murdoch v. Castro, 609 F.3d 983, 992 (9th Cir.2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,
does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, “if a habeas court must extend a rationale before it can apply to the facts at hand,” then by definition the rationale was not “clearly established at the time of the state-court decision.” AEDPA’s carefully constructed framework “would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.”
White, 134 S.Ct. at 1706 (internal citations omitted) (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).
Applying these standards, we hold that it was not unreasonable for the Nevada Supreme Court to rest its denial of Arren-dondo’s knowing and voluntary waiver claim in part on the circumstance that the enhancements had not been charged, or otherwise presaged, at the time of the waiver. Requiring pretrial knowledge of the potential for such later enhancements would extend Tovar’s requirement to cir-cumstanees not addressed by that case, which 28 U.S.C. § 2254(d)(1) would permit only if all reasonable interpretations of Tovar would so require. See White, 134 S.Ct. at 1706. That is not the case here.
First, as to whether “ ‘fairminded jurists could disagree’ on the correctness of’ the Nevada Supreme Court’s limitation on the knowledge a defendant must possess to waive counsel, Richter, 131 S.Ct. at 786 (emphasis added) (quoting Alvarado, 541 U.S. at 664, 124 S.Ct. 2140), there is a substantial argument that fairminded jurists already have endorsed that limitation, cf. John-Charles, 646 F.3d at 1250 (concluding that a rule was not unreasonable where several circuits, including our own, have already adopted it). The plurality opinion in Von Moltke, 332 U.S. at 709, 68 S.Ct. 316, on which Faretta partially relied, in terms requires a defendant waiving counsel to be aware only of the possible consequences of the charged offenses. That opinion conditioned waiver of counsel, for the purpose of an uncounseled guilty plea, on a defendant’s “apprehension of the nature of the charges, the statutory offenses included within them, [and] the range of allowable punishments thereunder. ...” Id. at 724, 68 S.Ct. 316 (emphasis added).[5] Punishment authorized by separate statutory provisions upon the filing of a separate information was thus beyond the knowledge required by the Von Moltke plurality. The necessary implication was that a defendant seeking to waive counsel for the purpose of entering a plea need not be aware of possible penal exposure under *1135 charges the state has not yet brought.[6]
The “fairminded jurist” standard focuses “on application of law rather than on counting noses,” Doody v. Ryan, 649 F.3d 986, 1007 n. 6 (9th Cir.2011) (en banc), so we must evaluate the substance of the distinction the Nevada Supreme Court relied on here. In doing so, we conclude that there are principled bases on which one could decide that the Tovar right is limited to charges filed at the time of waiver of counsel, at least with regard to enhancements, such as recidivist enhancements, that Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny do not require to be charged before trial and tried to a jury-
As is often the case in federal court, prior convictions may not be identified before trial, before the waiver of counsel, or before the entry of a guilty plea. Cf. e.g., United States v. Barrios-Gutierrez, 255 F.3d 1024, 1027 (9th Cir.2001) (en banc). Where a defendant is in the process of waiving counsel, he is likely, as here, to be reliant on the trial court for his knowledge of the range of permissible punishments, as his own lawyer is on the sidelines at this juncture. At best, the trial court likely could provide, and the defendant could obtain, contingent and general information about the possibility of greater penal exposure due to a potentially applicable recidivist enhancement: The defendant could learn that, depending on the nature of his prior convictions, and if the prosecutor decides subsequently to seek recidivist sentencing, his penal exposure could increase, although it may not be possible to say with any clarity what that exposure would be. Reasonable jurists could conclude that such vague and contingent knowledge about additional charges that might or might not be brought is unlikely to affect the choice of an otherwise determined defendant to proceed without counsel, and so is not pertinent to the knowing and intelligent waiver inquiry.
We might well conclude otherwise, were the issue before us on direct appeal, particularly where the impact of recidivist enhancements on the defendant’s penal exposure is great. The knowledge of very substantial recidivist sentencing enhancements, even if contingent and vague, could well be sufficiently likely to affect a defendant’s risk assessment in deciding whether to forego counsel to come within the Tovar requirement. Indeed, in United States v. Keen we held invalid a waiver of , counsel where there was “no indication that [the defendant] was aware of the enhanced penalty he faced as a result of [his] prior convictions under the armed career crimi *1136 nal provisions of 18 U.S.C. § 924(e),” along with several other problems. 104 F.3d 1111, 1116 (9th Cir.1996).[7] And, in the “analogous context” of the knowledge a defendant must possess to plead guilty under Federal Rule of Criminal Procedure 11, Gerritsen, 571 F.3d at 1009, our cases indicate that knowledge of potential recidivist enhancements may be necessary. Rule 11 requires an on-the-record determination that a defendant pleading guilty understands both “any maximum possible penalty” and “any mandatory minimum penalty.” Fed.R.Crim.P. ll(b)(l)(H)-(I). Under that rule, we have condoned the district court’s rejection of a guilty plea where a defendant was told in the plea colloquy that he faced a maximum sentence of two years, notwithstanding the potential application of a sentencing enhancement that would extend his maximum possible sentence to 20 years. See United States v. Valenzuela-Arisqueta, 724 F.3d 1290, 1296 (9th Cir.2013). We have also upheld a plea colloquy advising defendants of maximum possible sentences that the indictment does not support. See Garcia-Aguilar v. U.S. Dist. Court for S. Dist. of Cal, 535 F.3d 1021, 1025 (9th Cir.2008).
Nevertheless, we “ ‘may not issue the [habeas] writ simply because [we] con-elude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.’ ” Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Where, as here, the defendant was carefully advised of the procedural risks of foregoing representation by counsel, and also knew of his substantial penal exposure under the charges already filed, it was not unreasonable for the Nevada Supreme Court to conclude that he waived his right to counsel knowingly and intelligently.
B.
A defendant’s waiver of counsel must not only be knowing and intelligent, it must also be voluntary. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525; Patterson, 487 U.S. at 292 n. 4, 108 S.Ct. 2389. Arren-dondo argues that his decision to forego representation, even if knowing and intelligent, was not voluntary, “because he was forced to choose between incompetent, unprepared, and ineffective counsel versus self-representation.” Arrendondo’s argument fails on the facts, as he has not established that his trial counsel was constitutionally inadequate. We therefore need not, and do not, consider whether his legal theory, if supported by the facts, would entitle him to relief.
When unconstrained by 28 U.S.C. § 2254(d)(1), our cases do indicate that a Faretta waiver is involuntary if the alternative is constitutionally inadequate counsel. See Crandell v. Bunnell, 25 F.3d 754, 755 (9th Cir.1994) (per curiam); United States v. Robinson, 913 F.2d 712, 715-16 (9th Cir.1990). Electing self representation over unsatisfactory—but constitutionally sufficient—counsel does not make a defendant’s waiver of counsel involuntary. See Robinson, 913 F.2d at 715-16. Even if Supreme Court law has clearly established this standard—and we do not decide *1137 whether it has — Arrendondo has not factually satisfied it.
On collateral attack, a habeas petitioner contesting the validity of his waiver of counsel shoulders the burden of proof. See Tovar, 541 U.S. at 92, 124 S.Ct. 1379; Johnson v. Zerbst, 304 U.S. 458, 468-69, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United States v. Lenihan, 488 F.3d 1175, 1177 (9th Cir.2007) (per curiam). To establish the constitutional inadequacy of counsel, Arrendondo must demonstrate that his attorney was burdened by an actual conflict of interest, Cuyler v. Sullivan, 446 U.S. 335, 348-49, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), or that his attorney’s performance was both objectively deficient and prejudicial, Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Arrendondo does not begin to meet this burden. He notes in his briefing only that he and his last public defender, Lynch, had limited contact as they prepared for trial and that, shortly before his waiver, Arrendondo complained that he “ Svants motions and writs filed.’ ” The ha-beas record contains no information at all concerning what “motions and writs” he wanted filed, so it is impossible to evaluate whether they had any chance of success, or whether a competent lawyer could have had a tactical or strategic reason for not filing them. See Richter, 131 S.Ct. at 790. Without a fuller understanding of the scope of Lynch’s preparations or the type of “motions and writs” Arrendondo desired, it is impossible to evaluate the adequacy of Lynch’s representation or its effect upon Arrendondo’s case.
What little evidence is included in the record cuts against Arrendondo. In a pro se Motion to Dismiss Counsel, filed in the weeks leading up to trial, Arrendondo alleged that Lynch had failed to appear at a hearing to consider Arrendondo’s Motion for Bail Reduction, leaving him “without anyone to argue my position.” The record does not include a transcript of that hearing, but court minutes reveal that public defender Jannette Reyes-Speer appeared on Arrendondo’s behalf, contradicting any claim of abandonment. Moreover, at a subsequent hearing to consider Arrendon-do’s Motion to Dismiss Counsel, the court emphatically denied that Lynch’s absence had affected its decision on the bail-reduction motion. “It wouldn’t have mattered if it would have been Ms. Lynch or someone else standing there,” the court explained. “The same facts apply.” Thus, no possibility of Strickland prejudice could be established.
Last, Arrendondo’s Motion to Dismiss Counsel asserted the existence of what Arrendondo termed a “conflict of interest.” The claim is significant, because demonstrating “that an actual conflict of interest adversely affected his lawyer’s performance” would relieve Arrendondo of the burden of showing prejudice. Sullivan, 446 U.S. at 349, 100 S.Ct. 1708. But, in support of this claim, Arrendondo alleges not a conflict of interest but instead strategic differences between Arrendondo and his lawyer — namely, Lynch’s advice that Arrendondo enter into a plea agreement. No actual conflict of interest appears on the record.
In short, Arrendondo has not established that he was required to choose between constitutionally inadequate counsel and self-representation. His claim of involuntary waiver thus fails for lack of proof, whatever the merits might otherwise be.
III.
The district court dismissed Arrendon-do’s compulsory process claim as unex-hausted, for failure fairly to present an *1138 underlying federal theory. Before the Nevada Supreme Court, the district court concluded, Arrendondo “argued and cited Nevada state law” alone when he asserted that the trial court erred in refusing him adequate time to produce his witnesses. We affirm that ruling.
Usually, a state prisoner must exhaust available state remedies before a federal habeas court will consider his claim. See 28 U.S.C. § 2254(b)(1)(A). This “rule of comity reduces friction between the state and federal court systems by avoiding the ‘unseem[liness]’ of a federal district court’s overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance.” O’Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (alteration in original) (quoting Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)). Satisfying this exhaustion requirement ordinarily requires state prisoners to “ ‘fairly presen[t]’ ” their federal legal theories to the state courts, so that those courts are “alerted to the fact that the prisoners are asserting claims under the United States Constitution” and thus “given the opportunity to correct alleged violations of prisoners’ federal rights.” Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (alteration in original) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To fairly present a federal claim, a state prisoner must present to the state courts both the operative facts and the federal legal theories that animate the claim. See Gray v. Netherland, 518 U.S. 152, 162-63, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir.2005). Because Arrendondo’s brief before the Nevada Supreme Court focused exclusively on state law, he failed to present his compulsory-process claim as a federal claim.
1. Arrendondo argues that his inclusion of a reference to Harris v. State, 113 Nev. 799, 942 P.2d 151 (1997), in his brief before the Nevada Supreme Court satisfies the fair presentation requirement. “[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue.” Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir.2003) (en banc).
Nevertheless,
[f]or a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where ... the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.
Casey v. Moore, 386 F.3d 896, 912 n. 13 (9th Cir.2004); accord Fields v. Waddington, 401 F.3d 1018, 1022 (9th Cir.2005). Casey refused to recognize any such “signal” where the relevant brief never used the word “federal”; “did not refer expressly to the federal constitution or to any of its provisions”; and “did not indicate in parentheticals or elsewhere whether the[ ] state cases [the brief did cite] discussed the federal constitution.” 386 F.3d at 911—12. Arrendondo’s brief before the Nevada Supreme Court is similarly barren of any such textual reference to federal law on compulsory process. Arrendondo’s citation of that decision thus did not fairly present his federal claim to the Nevada Supreme Court.
*1139 2. Arrendondo. endeavors to fill the briefing gap with the observation that his pro se Motion to Dismiss Counsel, filed several months after his opening brief, alerted the Nevada Supreme Court to the federal component of his claim. Arrendon-do introduced his complaints about the performance of his appellate counsel, which were unrelated to counsel’s failure to argue the federal components of his claim, with an extended quotation from United States v. Nobles, 422 U.S. 225, 231, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).
Had Arrendondo included Nobles in his briefs, it might have satisfied the fair-presentation requirement. That requirement may be satisfied “by citing ... a case deciding [a sufficiently similar] claim on federal grounds.” Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).[8] But the Nobles citation appeared in a collateral pro se motion, not in the merits brief filed by counsel. “As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts (plural) in the manner required by the state, courts.” Casey, 386 F.3d at 915-16. That usually means “presenting] his federal, constitutional issue before the ... [state courts] within the four corners of his appellate briefing.” Castillo, 399 F.3d at 1000. A pro se procedural motion unrelated to the substantive merits of Arrendondo’s claim briefed by counsel is not part of the “appellate briefing” for purposes of the Castillo “four corners” requirement. Nor do we have any basis for concluding that the Nevada Supreme Court would nonetheless have considered on the merits a citation in a collateral procedural motion filed months before, pro se, by a represented defendant. See Nev. R.App. P. 28(a)(9); Powell v. Liberty Mut. Fire Ins. Co., 127 Nev. 14, 252 P.3d 668, 672 n. 3 (2011).
‘ 3. Last, Arrendondo asserts that the Nevada Supreme Court’s reference to Harris in the decision rejecting his appeal demonstrates that the Nevada Supreme Court “was aware of the federal constitutional basis of the claim,” so the question whether he properly raised the issue does not matter.
The legal premise of this argument is correct. “[T]here is no point in asking whether a state court had a ‘full and fair opportunity to resolve federal constitutional claims’ when the state court in fact did so.” Sandgathe v. Maass, 314 F.3d 371, 377 (9th Cir.2002) (quoting O’Sullivan, 526 U.S. at 845, 119 S.Ct. 1728); see also Ybarra v. McDaniel, 656 F.3d 984, 991 (9th Cir.2011); Casey, 386 F.3d at 916 n. 18. “Where a [state] court has in fact ruled on a claim, there is no possibility of ‘friction between the state and federal court systems.’ ” Sandgathe, 314 F.3d at 377 (alteration in original) (quoting O’Sullivan, 526 U.S. at 845, 119 S.Ct. 1728).
In Sandgathe, however, the last reasoned state court opinion “explicitly ruled on the federal constitutional issue[ ],” such that the claim was exhausted. Id. at 378; see also Ybarra, 656 F.3d at 991 (holding it “clear from the record that the Nevada Supreme Court did in fact rule on the merits” of the relevant claim). Here, in contrast, the Nevada Supreme Court did not expressly pass on the merits, under federal law, of Arrendondo’s claim that the trial court denied him adequate time to *1140 produce his witnesses. And it cited Harris in support of the proposition that “a district court has no duty to assist a proper-person in subpoenaing witnesses,” not to resolve a question of federal law. Such a citation does not indicate that the Nevada Supreme Court considered a federal argument never fairly presented to it.
4. In the alternative, Arrendondo asks us to excuse his failure to exhaust the compulsory-process claim because his appellate counsel was constitutionally ineffective.
“[Clause ... and actual prejudice” will excuse a state prisoner’s default of “his federal claims in state court pursuant to an independent and adequate state procedural rule,” and constitutionally ineffective assistance of counsel qualifies as cause. Coleman v. Thompson, 501 U.S. 722, 750, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although “[pjrocedural default and failure to exhaust are different concepts,” a failure to exhaust may result in a procedural default. Sandgathe, 314 F.3d at 376; see also Cassett v. Stewart, 406 F.3d 614, 621 n. 5 (9th Cir.2005). Such a default may occur if it is no longer possible under state law to pursue the claim that a petitioner failed to exhaust. See Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir.2002).[9] If that were the case here, then demonstrating the ineffective assistance of Arrendondo’s appellate counsel and consequent prejudice would excuse Arrendondo’s procedural default. See Coleman, 501 U.S. at 750, 752, 111 S.Ct. 2546. But to assert such an excuse in a federal habeas petition, a state prisoner must first exhaust in state court the claim that his appellate counsel was constitutionally inadequate. See Cockett v. Ray, 333 F.3d 938, 943 (9th Cir.2003); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir.1988).
Here, Arrendondo did not bring a state post-conviction petition raising either his compulsory process claim on the merits or a claim of ineffective assistance of his appellate counsel with respect to the compulsory process issue. Both paths were open to him, but he took neither. Pursing on post-conviction review his federal compulsory process claim and his claim of ineffective assistance of appellate counsel would have exhausted both, notwithstanding the alleged failures of his appellate counsel.
Arrendondo’s failure to raise either claim in state post-conviction proceedings bars consideration of his compulsory process claim now. Had Arrendondo sought post-conviction relief on the claims, we would have been able to address the compulsory process claim if it were cognizable in state court on post-conviction review, and we could have considered whether his appellate counsel was ineffective in not raising the federal compulsory process claim. If we concluded that appellate counsel was inadequate and that the inadequacy actually prejudiced Arrendondo, we could have addressed the compulsory process claim on the merits even if the state courts would not do so because of a procedural default. In the absence of any state post-conviction petition on either of the two related claims, however, we are entirely precluded from hearing his compulsory process claim on the merits, as Arrendon-do did not pursue the claims through all available state procedures. See 28 U.S.C. § 2254(b).[10]
*1141 IV.
For the reasons above, we AFFIRM the district court’s judgment on the merits, holding the Nevada Supreme Court’s ruling on the validity of Arrendondo’s waiver of the right to counsel not unreasonable. And we AFFIRM the district court’s dismissal of Arrendondo’s compulsory process claim.
AFFIRMED.

. Arrendondo does not contend that the Nevada Supreme Court’s ruling rested on unreasonable factfinding, so 28 U.S.C. § 2254(d)(2) — permitting relief where the state court decision “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding” — is inapplicable.

. Von Moltke was a plurality opinion, which Faretta, 422 U.S. at 835, 95 S.Ct. 2525, cited for support. Typically, the holding of such a decision is "that position taken by those Members who concurred in the judgments on the narrowest grounds.” Maries v. United States, 430 U.S. 188, 198, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (internal quotation marks and citation omitted). Justices Frankfurter and Jackson concurred in the judgment of the Von Moltke plurality on the ground that the validity of the defendant’s waiver depended on the resolution of questions of credibility, and that remand was therefore necessary for further findings of fact. Von Moltke, 332 U.S. at 729-31, 68 S.Ct. 316 (Frankfurter, J., concurring in the judgment); see also id. at 727, 68 S.Ct. 316 (plurality opinion) (remanding for the reasons described in Justice Frankfurter’s separate opinion). The Von Moltke plurality opinion, however, has been cited by the Supreme Court as that of the Court, albeit with the "cf.” signal, but no note of its plurality character. See Patterson, 487 U.S. at 298, 108 S.Ct. 2389. The Eighth Circuit has relied on Von Moltke as clearly established Supreme Court law. See Shafer v. Bowersox, 329 F.3d 637, 651 (8th Cir.2003). We need not further evaluate Von Moltke’s independent authority as clearly established Supreme Court law, because Tovar clearly establishes that a defendant waiving counsel must understand "the range of allowable punishments attendant upon the entry of a guilty plea.” 541 U.S. at 81, 124 S.Ct. 1379.

. Decades before Tovar, we adopted a similar requirement in our cases on direct review. See, e.g., United States v. Harris, 683 F.2d 322, 324-25 (9th Cir.1982).

. At the time of Arrendondo's conviction, Nevada law did not require that a defendant be charged with the habitual criminal enhancement, or with the prior convictions underlying that enhancement, prior to trial. See Nev. Rev.Stat. §§ 173.095, 207.016(2). At that time, the statute permitted the prosecutor to seek an enhanced sentence, at the discretion of the prosecuting attorney, see Nev.Rev.Stat. § 207.010(2), by filing an information after conviction but before sentencing, see Crutcher v. Eighth Judicial Dist. Court In & For Cnty. of Clark, 111 Nev. 1286, 903 P.2d 823, 825-26 (1995) (per curiam). That is what happened here.
In 2013, however, the Nevada legislature amended the relevant statutory provision to require the filing of a habitual criminal information "not less than 2 days before the start of the trial on the primary offense, unless an agreement of the parties provides otherwise or the court for good cause shown makes an order extending the time.” 2013 Nev. Legis. Serv. Ch. 292, § 1 (A.B. 97) (West) (codified at Nev.Rev.Stat. § 207.016(2)).

. The adverb "thereunder” is referential. " 'Where no contrary intention appears,’ ” such a referential word " 'refer[s] solely to the last antecedent.’ ” May Trucking Co. v. Oregon Dept., of Transp., 388 F.3d 1261, 1268 (9th Cir.2004) (quoting Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1311 (9th Cir.1992)); cf. Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). In the quotation from Von Moltke, "thereunder” refers to the statutory offenses included within the charges faced by the defendant. The full clause, then, requires knowledge of "the range of allowable punishments” under the statutory offenses with which the defendant has been charged.

. We note, without adopting the result as our own, that the Fourth Circuit resolved a similar question in the "analogous context” of the knowledge a defendant must possess to plead guilty, Gerritsen, 571 F.3d at 1009, holding that it is not unreasonable to determine that ignorance as to uncharged recidivist sentencing enhancements does not render the waiver of counsel invalid, see Appleby v. Warden, N. Reg’l Jail & Corr. Facility, 595 F.3d 532, 541 (4th Cir.2010). To be valid, a guilty plea "not only must be voluntary but must be [a] knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences.” Brady v. United States, 397 U.S. 742. 748. 90 S.Ct. 1463. 25 L.Ed.2d 747 (1970). That standard, in turn, requires a defendant waiving his right to trial to be "fully aware of the direct consequences” of his plea. Id. at 755, 90 S.Ct. 1463 (internal quotation marks omitted). The Fourth Circuit held not an unreasonable application of Supreme Court law, under 28 U.S.C. § 2254(d)(1), the West Virginia Supreme Court of Appeals’ determination that a defendant's guilty plea is valid notwithstanding his ignorance of the potential application of an enhanced sentence, which had not yet been charged at the time of the plea, under West Virginia's recidivist offender statutes. See Appleby, 595 F.3d at 541.

. Although Keen predates Tovar, the law of this Circuit already required a defendant waiving his right to counsel to understand his possible penal exposure. See, e.g., Harris, 683 F.2d at 324. Keen itself recognized that a defendant must be " 'aware of ... the possible penalties' " to waive counsel. Keen, 104 F.3d at 1114 (quoting Mohawk, 20 F.3d at 1484).

. Nevertheless, "[m]ere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,’ do not establish exhaustion.” Castillo, 399 F.3d at 999. Thus even if Nobles were included in Arrendondo’s merits briefs, we would have to analyze the specificity with which it analyzed the relevant issues — an analysis we do not undertake here.

. “Properly exhausted claims may also be procedurally defaulted. If a state court determines that a claim is procedurally barred, we are precluded from reviewing the merits of the claim if the procedural bar is adequate and independent.” Beaty, 303 F.3d at 987.

. Arrendondo also asserts that the Nevada's failure to oppose this argument in its answer *1141 ing brief amounts to an implied concession. But Nevada may only waive the exhaustion requirement expressly, see 28 U.S.C. § 2254(b)(3), which it has not done here.