**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

TAN CHI PHAN,

                Appellant.

DIVISION ONE

No. 82708-1-I

PUBLISHED OPINION

DWYER, J. — The Sixth Amendment to the United States Constitution provides criminal defendants with two opposing yet fundamental rights: the right to be represented by counsel and the right to represent oneself. Once the trial court has found that a defendant has knowingly, intelligently, and voluntarily waived his right to counsel and elected to represent himself, it is not the trial court's function to second-guess the defendant's decision. Neither is it the court's role to later talk the defendant out of it. However unwise a defendant's decision, the constitution respects the defendant's right to make it.

In the trial court, Tan Phan elected to waive his right to counsel and represent himself in defending against the criminal charges the State brought against him. On appeal, however, Phan asserts that the trial court later erred when it did not sua sponte conduct a second inquiry into his desire to represent himself either after the State amended the information to add a second charge or when Phan's mental health allegedly deteriorated. We hold that, on facts of

No. 82708-1-I/2

this case, the trial court had no obligation to conduct a second colloquy, and

Phan's waiver of counsel remained valid until he requested an attorney prior to

sentencing. Accordingly, we affirm Phan's convictions.

I

On June 15, 2020, Tan Phan went to the home of Jerry and Linda Berger,

broke multiple windows, threatened the Bergers by brandishing a knife through a

broken window, and crashed his car into the side of their home. The State

charged Phan with attempted burglary in the first degree for the act of ramming

his vehicle into the home.

Early in the proceedings, Phan expressed the desire to represent himself.

On August 18, 2020, Judge Patrick Oishi conducted a colloquy with Phan to

ensure that he understood the rights he was surrendering and the risks of

proceeding pro se. Prior to the hearing, Phan's appointed counsel reviewed the

waiver of counsel form with Phan, with the assistance of a Vietnamese

interpreter.

Judge Oishi explained to Phan that the maximum penalty for attempted

burglary in the first degree was 10 years in prison and a $20,000 fine. The trial

court also explained that attempted burglary in the first degree was a strike

offense.[1] Phan stated that he understood. The trial court then asked Phan

which court rules would apply to the case. When Phan indicated that he did not

understand the question, the trial court emphasized that Phan would be held to

---

[1] A "strike offense" is an offense that qualifies as a "most serious offense" under RCW 9.94A.030(32). An individual convicted of three or more "most serious offenses" may be sentenced as a persistent offender to life in prison without the possibility of parole. RCW 9.94A.030(37), .570.

2

the same standard as an attorney and at trial would need to know the applicable rules and laws. Phan then asked for standby counsel. Judge Oishi informed Phan that there was no constitutional entitlement to standby counsel and that no such attorney would be appointed in the case. The trial court then informed Phan that he had the right to represent himself but

> I think this is a terrible idea. It's a terrible idea, because I know you think you're smart and it sounds like you have done some studies that might be helpful to you, but you're going to be held to such a high standard you're going to be completely on your own. That's why I think this is a bad idea.

> Phan responded, "Your Honor, I hear your concern and I know you have

empathy and sympathy for me." The trial court stated that empathy and sympathy had nothing to do with his warnings; "I just have been around long enough to know that this almost never works out well." Phan indicated, "I understand my consequence, Your Honor. And I would like to proceed as a pro se also." Satisfied that Phan was knowingly, intelligently, and voluntarily surrendering his right to counsel and that Phan understood the charge against him and the possible consequences of his waiver, the trial court granted his request. Phan also waived his right to a jury trial and opted to proceed to a bench trial.[2]

Trial was conducted before Judge Catherine Shaffer from October 12 to October 14, 2020. On October 8, 2020, prior to trial, the trial court conducted a CrR 3.5 hearing, requested by Phan in an attempt to exclude statements he had

---

[2] In this appeal, Phan assigns no error to the trial court's decision to accept Phan's waiver of his right to a trial by jury.

made to law enforcement. Shortly before the hearing, the State moved to amend the information to add a charge of burglary in the first degree with a deadly weapon enhancement, based on Phan's act of threatening the Bergers with a knife through the broken window. Phan stated that he had no objection to the motion, waived a reading of the information on the record, and entered a plea of not guilty to the new charge.

Phan then filed a bill of particulars, asking the State to clarify the basis for its charges, particularly by stating what it alleged to be the "crime against a person or property" that Phan intended to commit when entering the Berger home.[3] The State informed Phan on the record that it was alleging that Phan intended to commit assault against someone in the house and that he intended to cause significant property damage.

Phan's defense to both charges was that he lacked the ability to form the requisite intent due to his mental health problems. After hearing the testimony of multiple witnesses, the trial court convicted Phan on both charges. It then entered its decision pursuant CrR 6.1(d), along with findings of fact and conclusions of law supporting the convictions.

Phan then moved to have an attorney appointed to represent him at sentencing. The trial court granted his request. At sentencing, Phan, through his attorney, requested an exceptional downward sentence of 24 months of incarceration on the basis of Phan's mental health difficulties both prior to and

---

[3] "A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person." RCW 9A.52.020(1).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82708-1-I/5

after the incident, his failed mental health defense, youthfulness, and the COVID-19 pandemic. The trial court rejected Phan's request and sentenced him to 30 months on count one and 25 months on count two, to be served concurrently, plus a mandatory consecutive 24 months for the deadly weapon enhancement, for a total of 54 months of incarceration.

II

Phan asserts that the trial court erred by not sua sponte conducting a colloquy with him on his desire to continue representing himself when the State amended the information to add a charge of burglary in the first degree with a deadly weapon enhancement. This is so, Phan asserts, because the new charge and enhancement significantly increased the maximum possible penalty, and the constitution requires that the court conduct another colloquy when there is a significant change in circumstances. We disagree.

A

We review a trial court's decision on a defendant's request to proceed pro se for abuse of discretion. State v. Burns, 193 Wn.2d 190, 202, 438 P.3d 1183 (2019). A trial court abuses its discretion if its decision is manifestly unreasonable, unsupported by the record, or based on an incorrect legal standard. Burns, 193 Wn.2d at 202. We apply a correlating standard of review to this odd situation—reviewing the trial court's decision to do nothing to cause a lawfully pro se defendant to change his mind.

The United States and Washington Constitutions provide criminal defendants with the right to counsel, as well as the right to represent themselves

5

at trial. U.S. CONST. amend. VI, XIV; WASH. CONST. art. 1, § 22; Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); State v. Luvene, 127 Wn.2d 690, 698, 903 P.2d 960 (1995). The right to self-representation is "so fundamental that it is afforded despite its potentially detrimental impact on both the defendant and the administration of justice." State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).

However, this right is neither absolute nor self-executing. Madsen, 168 Wn.2d at 504. A defendant wishing to invoke his right to self-representation must make an affirmative, unequivocal demand to waive counsel and proceed pro se. Luvene, 127 Wn.2d at 698. A trial court may deny the request only if the request is equivocal, untimely, involuntary, or made without a general understanding of the consequences. Burns, 193 Wn.2d at 202-03; Madsen, 168 Wn.2d at 505. For the trial court to properly accept a waiver of counsel, the record should establish that "'[the defendant] knows what he is doing and his choice is made with eyes open.'" State v. Hahn, 106 Wn.2d 885, 889, 726 P.2d 25 (1986) (quoting Faretta, 422 U.S. at 835).

Our Supreme Court has "strongly recommend[ed]" that the trial court conduct a colloquy on the record to assure that a defendant understands the risks of self-representation. City of Bellevue v. Acrey, 103 Wn.2d 203, 211, 691 P.2d 957 (1984). "This colloquy should include a discussion about the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of the

6

No. 82708-1-I/7

accused's defense." State v. Modica, 136 Wn. App. 434, 441, 149 P.3d 446 (2006), aff'd, 164 Wn.2d 83, 186 P.3d 1062 (2008).

B

Phan first argues that his initial waiver of counsel was invalid because the trial court did not advise him of the maximum potential penalty for burglary in the first degree. But Phan was not charged with burglary in the first degree at the time of his waiver of counsel. A waiver of counsel is valid if the defendant "accurately understands the penalty he or she faces at the time the waiver is made." Modica, 136 Wn. App. at 445. Phan cites no authority for the proposition that a trial court must advise the defendant about the consequences of a crime for which the defendant has not been charged. Were this the standard

> there could never be a competent waiver of the assistance of counsel inasmuch as few, if any, judges, and perhaps not even lawyers, could deliver an impromptu dissertation in every case covering all possible included offenses, the range of allowable punishments, all possible defenses to the charges and circumstances in mitigation thereof.

Arnold v. United States, 414 F.2d 1056, 1058 (9th Cir. 1969). We agree. Phan's argument is without merit.

C

Phan next contends that his initial waiver of counsel became invalid when the State added a new charge and the trial court erred by not sua sponte conducting a second colloquy. We disagree.

When a defendant makes a demand to represent himself, trial courts are required to give "'every reasonable presumption'" against the defendant's waiver

7

of the right to counsel. Madsen, 168 Wn.2d at 504 (internal quotation marks omitted) (quoting In re Det. of Turay, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)). While conducting its colloquy, the trial court may use all reasonable means to dissuade the defendant from surrendering his right to counsel. But once a trial court has found that the defendant has made a valid waiver of the right to counsel, the stated presumption disappears and trial judges should not attempt to impose their will upon a defendant who is exercising a constitutional right.

The United States Supreme Court explained why this is so in Faretta. As the Supreme Court noted, the rights afforded in the Sixth Amendment, such as the right to confront witnesses and the right to compulsory process, are personal to the defendant, not to the defense attorney. Faretta, 422 U.S. at 819. The right to represent oneself was not only implicit in the language of the Sixth Amendment, but was well accepted as a matter of historical practice. Faretta, 422 U.S. at 822-32. For over 200 years, common law courts had accepted the "nearly universal conviction . . . that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so." Faretta, 422 U.S. at 817. Given this historic practice, there was no doubt in the Justices' minds that the Sixth Amendment was enacted to respect the defendant's free choice. In the Court's words, "although he may conduct his own defense ultimately to his own detriment, *his choice must be honored* out of 'that respect for the individual which is the lifeblood of the law.'" Faretta, 422 U.S. at 834 (emphasis added) (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (Brennan, J., concurring)).

8

When a trial court sua sponte induces a pro se defendant to engage in a second colloquy, the purpose of which is to get the pro se defendant to second-guess the defendant's original unequivocal decision to waive counsel, the defendant's choice is *not* "be[ing] honored." See Faretta, 422 U.S. at 834.

Given the respect the law affords to a defendant's decision, lower federal courts have held that "only a substantial change in circumstances will require the [trial] court to inquire whether the defendant wishes to revoke his earlier waiver." United States v. Fazzini, 871 F.2d 635, 643 (7th Cir. 1989); accord United States v. McBride, 362 F.3d 360, 367 (6th Cir. 2004); United States v. Hantzis, 625 F.3d 575, 582 (9th Cir. 2010). We adopted this approach in Modica. There, the defendant asserted, as Phan does here, that the trial court was required sua sponte to conduct a second colloquy after the State added a charge of witness tampering. Modica, 136 Wn. App. at 444-45. We noted that "it is not ordinarily incumbent upon a trial court to intervene at a later stage of the proceeding to inquire about a party's continuing desire to proceed pro se." Modica, 136 Wn. App. at 445. Rather, the rule adopted is that a valid waiver of the right to counsel generally continues throughout the proceedings, unless the waiver was limited to a particular stage of the proceedings or there has been a substantial change in circumstances. Modica, 136 Wn. App. at 445. When applying this rule to Modica's case, we held that the mere addition of a new charge did not amount to a substantial change in circumstances. Modica, 136 Wn. App. at 446.

Phan attempts to distinguish Modica on the basis that the new charge against Modica was a lesser offense that would not have increased the maximum

9

possible penalty, whereas here the new charge was a greater offense with a deadly weapon enhancement that did increase the possible maximum penalty. While initially having some appeal, upon scrutiny it is clear that the requirement adopted in Modica is not so easily satisfied. Indeed, case law indicates that the mere addition of a new charge, particularly when that charge is based on the same set of facts alleged in the initial information, does not sufficiently alter the defendant's general understanding of the consequences of his decision to represent himself so as to require the trial court to sua sponte intervene and once again call into question the pro se defendant's constitutionally protected decision to employ self-representation.

Corresponding federal case law demonstrates that this is so. For instance, in Arellanes v. United States, 302 F.2d 603, 610 (9th Cir. 1962), the defendant argued that the court should have conducted an additional colloquy when the district attorney filed an information charging the defendant as a repeat offender, as the new allegation increased the maximum possible penalty. The Ninth Circuit held that this event did not require intervention by the trial court. Arellanes, 302 F.2d at 610. To the contrary, the circuit court stated that "it would constitute an excessive burden to require the trial court to intervene at each potentially separable stage of trial to conduct an inquiry respecting a party's continuing wishes with respect to counsel, when, as here, appellant's continuing state of mind respecting his original waiver is clear." Arellanes, 302 F.2d at 610 (citation omitted). The court noted that this was not a situation in which the new information "gives rise to a full-scale trial of complex issues." Arellanes, 302 F.2d

at 610. Rather, the only issue was whether the defendant was the same person named as having the cited prior convictions, "a fact peculiarly within the knowledge of defendant." Arellanes, 302 F.2d at 611.

A more recent decision from the same court confirmed that this remains the prevailing view. In analyzing a habeas petition, the circuit court rejected the defendant's contention that the trial court's failure to advise him of the maximum possible penalty, when the State requested posttrial to have the defendant sentenced as a habitual offender, constituted a violation of clearly established law. Arrendondo v. Neven, 763 F.3d 1122, 1136 (9th Cir. 2014). As the Ninth Circuit noted, at the time that the defendant waived his right to counsel, he had not been charged as a habitual offender. Arrendondo, 763 F.3d at 1133. The court held that "[c]learly established Supreme Court law does not require a defendant waiving his right to counsel to understand the potential application of recidivist sentencing enhancements *that had not yet been charged,* and were not required to have been charged, at the time of the waiver." Arrendondo, 763 F.3d at 1133.

For his part, Phan directs us to Jensen v. Hernandez, 864 F. Supp. 2d 869 (E.D. Cal. 2012), in which a federal trial court granted a habeas petition filed by a defendant who was subject to an amended information alleging a sentencing enhancement. After receiving a written concession from the California Attorney General's Office, the district court accepted the concession and ruled that the addition of the sentencing enhancement to the information constituted a substantial change in circumstances necessitating a second colloquy confirming

11

No. 82708-1-I/12

the defendant's desire to continue to represent himself, and that the state court's failure to do so entitled the defendant to habeas relief. Jensen, 864 F.Supp.2d at 900.

For several reasons, we are not persuaded by Jensen. First, one month thereafter, the Ninth Circuit (in which the Jensen trial court is located), filed an unpublished opinion in which it rejected an identical ruling reached by a judge of the Southern District of California. See Becker v. Martel, 472 Fed. Appx. 823, 824 (9th Cir. 2012). Because the State conceded error in Jensen, similar appellate review of the district court decision was not available. Second, unlike in Jensen, the State here has not conceded that a substantial change in circumstances took place that would have necessitated a second colloquy. And third, the Jensen decision was filed two years before the Ninth Circuit's contrary decision in Arrendondo. For all of these reasons, we do not find Jensen to be an authoritative decision.

Phan also points us to State v. Rhoads, 813 N.W.2d 880 (Minn. 2012). In that case, the Minnesota Supreme Court held that when the State doubles the maximum possible punishment by filing new charges, a prior waiver of counsel is no longer valid.[4] Rhoads, 813 N.W.2d at 889-90. But Rhoads adopted the reasoning of the Southern District of California's ruling in Becker v. Martel, 789 F. Supp. 2d 1235 (S.D. Cal. 2011), which, as previously noted, was subsequently overturned by the Ninth Circuit. Becker, 472 Fed. Appx. at 824. Because it rests

---

[4] In Rhoads, the defendant was initially charged with second degree burglary. The State of Minnesota later added a charge of first degree burglary. 813 N.W.2d at 883.

12

on such a shaky foundation, we decline to adopt Minnesota's jurisprudential approach to this issue.

D

We also decline to adopt a bright line rule as to that which constitutes such a substantial change in circumstances that a second colloquy into the defendant's continued desire for self-representation is required. This is so because the facts of this case do not require us to do so.

The record of the proceedings below demonstrates that Phan's continuing state of mind respecting his original waiver of counsel remained clear: he wished to represent himself at trial.

At the hearing during which Phan initially waived his right to counsel, Phan did not state that his waiver was conditioned on his understanding that the maximum possible penalty that he faced would never be greater than 10 years imprisonment. Indeed, Phan said nothing about the maximum possible penalty other than that he understood what it was. The penalty Phan faced appears from the record to have had no impact on his decision to validly waive his right to counsel. Phan's statements during the colloquy do indicate, however, that his decision to waive his right to counsel was influenced by his experience representing himself in court in Vietnam and his understanding of the elements of the charge against him.

When the State moved to amend the information, the charge it sought to add was one count of burglary in the first degree with a deadly weapon enhancement. This charge was based on the same set of facts that it had

already alleged in the initial complaint. The legal elements of both charges were virtually the same. Nothing in the amended information changed the nature of Phan's defense. Phan's defense to both charges was that he lacked the requisite capacity to form the necessary intent to commit a crime against a person in the house. This remained his defense throughout the case.

Had Phan believed that amendment of the information caused him unfair surprise, he had a remedy in requesting a continuance. State v. Alvarado, 73 Wn. App. 874, 878, 871 P.2d 663 (1994). Not only did Phan not request a continuance, he stated that he had no objection to the State's motion to amend. The trial court offered to read the amended information into the record, but Phan stated that he did not wish the court to do so. Instead, Phan sought clarification of both the original charge and new charge by filing a written bill of particulars, which was immediately addressed on the record. At no time during this hearing did Phan indicate that the danger of increased penalties caused him to question the wisdom of continuing pro se.

Phan's behavior during the trial similarly reflects his continued desire to represent himself. Phan conducted cross-examination of all witnesses, made objections based on the evidence rules, and gave his own closing argument that focused on the legal elements of the charges. At no point did Phan express that he would like to have an attorney reappointed to take over his defense.

Moreover, after he was found guilty, Phan requested reappointment of an attorney to represent him at sentencing. Thus, it is clear both that—all along—Phan knew how to make such a request and also knew that—at all times—he

14

No. 82708-1-I/15

had the ability to pose such a request to the court. It is clear, however, that—in Phan's mind—only after being convicted did the circumstances change significantly enough for him to change his mind as to the wisdom of his pro se status.

The record thus indicates that Phan was intent on representing himself and that the addition of new charges did not affect his decision. The trial court was not required to conduct a second colloquy sua sponte when Phan had already made his decision clear. Moreover, the trial court was duty bound to honor Phan's decision and wisely chose not to engage in an inquiry that was not necessary but might serve to overcome Phan's free will. There was no error.

III

Phan further asserts that the trial court erred by not inquiring into his mental competency to represent himself while the trial was ongoing. The State contends that Phan showed no signs of mental incompetency during trial and the trial court therefore had no duty to inquire about his ability to represent himself. Although the parties focus on the factual dispute of Phan's mental state, we resolve this issue on a purely legal basis.

A

At the outset, we note that Phan does not argue that he was ever incompetent to stand trial. Although often conflated under an umbrella of "competency," the distinction between competency to stand trial and competency to represent oneself is important, as the legal standards governing each are vastly different.

15

No. 82708-1-I/16

A "'mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself,'" and, accordingly, cannot be forced to undergo trial. Drope v. Missouri, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) (quoting Caleb Foote, A Comment on Pre-Trial Commitment of Criminal Defendants, 108 U. PA. L. REV. 832, 834 (1960)). The test for incompetency to stand trial asks whether the defendant "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." Drope, 420 U.S. at 171; accord Dusky v. United States, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Washington imposes an ongoing obligation on the trial court to order a competency hearing whenever there is reason to doubt the defendant's competency to stand trial. RCW 10.77.060(1)(a); State v. McCarthy, 193 Wn.2d 792, 803, 446 P.3d 167 (2019).

However, these are not the standards that apply when, on appeal, for the first time, a defendant asserts that despite being competent to stand trial, the defendant was incompetent to defend pro se. As the United States Supreme Court explained, the test for competency to stand trial asks whether the defendant is able to "consult with counsel" and "'assist [counsel] in preparing his defense.'" Indiana v. Edwards, 554 U.S. 164, 170, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008) (quoting Drope, 420 U.S. at 171). This standard "assume[s] representation by counsel and emphasize[s] the importance of counsel." Edwards, 554 U.S. at 174. Given that this assumption is necessarily unwarranted when a defendant elects self-representation, "an instance in which a

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

defendant who would choose to forgo counsel at trial presents a very different set of circumstances, which . . . calls for a different standard." Edwards, 554 U.S. at 174-75.

In Edwards, the defendant was twice found incompetent to stand trial and ordered to be committed to a mental hospital in an effort to regain competency. 554 U.S. at 167-68. Edwards' condition improved during his periods of commitment, and he was eventually deemed competent to stand trial. Edwards, 554 U.S. at 168-69. Then Edwards requested to represent himself. Edwards, 554 U.S. at 168-69. The trial court denied the request, finding that Edwards' history of mental illness and periods of incompetency rendered him incompetent to defend himself regardless of his current fitness to stand trial. Edwards, 554 U.S. at 169. On appeal, Edwards asserted that the denial of his request amounted to a violation of his constitutional right to self-representation. Edwards, 554 U.S. at 169.

The Supreme Court disagreed. The Court noted that, given the variant presentations of mental illness, there may be some instances in which a defendant "may well be able to satisfy Dusky's mental competence standard [to stand trial], for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." Edwards, 554 U.S. at 175-76. The Court ultimately held:

> [T]he Constitution permits judges to take realistic account of the
> particular defendant's mental capacities by asking whether a
> defendant who seeks to conduct his own defense at trial is mentally

17

No. 82708-1-I/18

competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

Edwards, 554 U.S. at 177-78.

B

Washington courts have subsequently clarified the application of Edwards to cases in which the defendant's request to waive his right to counsel and proceed pro se is granted. In In re Pers. Restraint of Rhome, 172 Wn.2d 654, 664, 260 P.3d 874 (2011), a personal restraint petitioner cited the Edwards decision when contending that the federal constitution required the trial court to find him competent before permitting him to represent himself at trial. Our Supreme Court declined to read Edwards as establishing any such requirement, noting that "Edwards does not *require* trial courts to evaluate a defendant's mental health status in order to secure a valid waiver of counsel." Rhome, 172 Wn.2d at 665. Our Supreme Court held that Edwards, along with earlier Washington precedent, *permitted* a trial court to consider the defendant's mental health when assessing whether a request for self-representation is knowing, intelligent, and voluntary, but that the trial court is *not constitutionally required* to conduct an independent determination as to the defendant's competency to proceed pro se. Rhome, 172 Wn.2d at 665. The court held open the question of whether Washington law requires "a more stringent waiver of counsel for a defendant whose competency is questioned." Rhome, 172 Wn.2d at 665.

In the aftermath of the Rhome decision, Division Three of our court was

18

asked by a defendant on appeal to decide the issue that the Supreme Court had declined to address. That appellant urged the appellate court to hold that "Washington law *requires* trial courts to consider a mentally ill defendant's ability to represent himself at trial before accepting a waiver of counsel." State v. Lawrence, 166 Wn. App. 378, 392, 271 P.3d 280 (2012) (emphasis added). The appellate court refused to do so. Lawrence, 166 Wn. App. at 392.

The court cited several reasons for this refusal. The first reason cited by the court was that requiring the trial court to inquire into a defendant's mental competency to represent himself would impose a duty inconsistent with the results of earlier cases in which the Supreme Court had upheld a defendant's waiver of counsel even when the trial court had not inquired of the defendant's mental health in its colloquy.[5] Lawrence, 166 Wn. App. at 392. The second reason given was that the facts presented by Lawrence did not warrant announcement of a new rule. Lawrence, 166 Wn. App. at 393. And the third reason given was that any such rule would be difficult, if not impossible, to apply in practice. Lawrence, 166 Wn. App. at 394. The appellate court noted that not every case warrants an inquiry into the defendant's mental health and it would be difficult to craft a rule that applied to some defendants and not to others. The court further noted that current precedent already allows the trial court discretion to reject a defendant's request for self-representation if mental illness hinders the defendant's ability to knowingly, voluntarily, and intelligently waive his right to counsel. Lawrence, 166 Wn. App. at 395. Accordingly, the court held that

---

[5] See, e.g., State v. Hahn, 106 Wn.2d 885, 893, 726 P.2d 25 (1986).

19

No. 82708-1-I/20

"[m]andating the use of that discretionary authority in some difficult-to-define subset of these types of cases will only limit trial court discretion at a time when it is most needed and will not provide for any meaningful review." Lawrence, 166 Wn. App. at 395.

Our precedent demonstrates that the trial court had no duty to inquire into Phan's mental health when assessing the validity of his waiver of counsel. So long as, after engaging in a colloquy, the trial court was satisfied that Phan's waiver of counsel is knowing, voluntary, and intelligent, it was not required to inquire further. Similarly, the trial court had no duty to reassess the validity of Phan's waiver of counsel absent any indication that he was no longer competent to stand trial. The record contains no indication that the trial court suspected that Phan was incompetent to stand trial, and Phan neither asserts nor establishes that he decompensated to any such degree. There was no error.

IV

Phan finally argues that the trial court erred by not imposing an exceptional sentence downward due to his failed mental health defense. This argument is without merit.

Sentences within the standard range are ordinarily not appealable. RCW 9.94A.585(1). A limited exception exists when the trial court refuses to exercise its discretion or relies on an impermissible basis for refusing to impose a downward exceptional sentence. State v. Schloredt, 97 Wn. App. 789, 801, 987 P.2d 647 (1999). "The court may impose a sentence outside the standard sentence range for an offense if it finds, considering the purpose of this chapter,

20

that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The trial court may impose a downward exceptional sentence if it finds by a preponderance of the evidence that mitigating circumstances exist. RCW 9.94A.535(1). Additionally, when the defendant asserts mental health as the basis for a downward exceptional sentence, the record must establish that the condition significantly impaired the defendant's ability to appreciate the wrongfulness of the conduct or conform their conduct to the law. RCW 9.94A.535(1)(e); accord Schloredt, 97 Wn. App. at 801-02.

Phan argues that the trial court abused its discretion by not granting his request to impose an exceptional downward sentence. But abuse of discretion is not the standard by which we review standard range sentences. Instead, Phan must demonstrate that the trial court refused to exercise any discretion or utilized an impermissible basis for denying an exceptional downward sentence. He demonstrates neither. Phan does not identify any legally impermissible basis upon which the trial court acted. Nor does he show that the trial court refused to exercise its discretion.

To the contrary, the record indicates that the trial court did consider Phan's mental health when imposing sentence. In recounting the offense and its effects, the trial court stated that Phan's actions were "absolutely" fueled by mental illness and delusion, but that "it wasn't the kind of behavior that amounts to either diminished capacity or insanity." The trial court expressed some concern that Phan may still possess an unhealthy obsession with the victims and

21

No. 82708-1-I/22

that this was concerning for their safety. The trial court also noted that, having heard all of the evidence, "the state could have charged this more aggressively than they did," and Phan could have faced a much higher sentence.

Ultimately, the trial court found that Phan's mental illness warranted a lower sentence than it would otherwise have been inclined to impose, but did not justify a sentence below the standard range. Because the trial court did not fail to exercise its discretion and it did not impose a sentence on an unlawful basis, Phan's standard range sentence is not appealable.

Affirmed.

_Dwyer, J._

WE CONCUR:

_Birk, J._          _Chung, J._

22