Filed 9/25/23  P. v. Stewart CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F083847 |
| Plaintiff and Respondent, | |
| v. | (Stanislaus Super. Ct. No. CR-21-004088) |
| CHARLES RANANDO STEWART, JR., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ricardo Cordova, Judge.

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, and Ian Whitney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING OPINION**

Defendant and appellant Charles Ranando Stewart, Jr. (defendant), faced multiple serious charges when he filed a form requesting to represent himself. Defendant initialed a litany of advisements on the form. However, the trial court did not repeat the advisements orally. Defendant contends the granting of his own request to represent himself was prejudicially erroneous. We disagree and affirm.

## BACKGROUND

In an amended information filed August 23, 2021, the Stanislaus County District Attorney charged defendant with forced oral copulation (count 1; Pen. Code, § 287, subd. (c)(2)(a)),[1] forcible rape (count 2; § 261, subd. (a)(2)), robbery (count 3; § 211), first degree burglary (count 4; § 459) of an occupied residence (§ 667.5, subd. (c)(21)), two counts of battery upon a spouse or cohabitor (counts 5 and 8; § 273.5, subd. (a)), two counts of assault likely to produce great bodily injury (counts 6 and 9; § 245, subd. (a)(4)), stalking (count 7; § 646.9, subd. (a)). The information further alleged that defendant used a deadly weapon (knife) in the commission of the burglary. (§ 12022, subd. (b)(1).) As to all counts, the information alleged defendant had suffered a prior serious felony conviction for robbery on February 11, 2011. (§ 667, subd. (d).) As to counts 1 through 4, the information alleged defendant had suffered a prior serious felony conviction for robbery on February 11, 2011. (§ 667, subd. (a).)

A jury convicted defendant on all counts and found the occupied residence allegation and deadly weapon enhancement to count 4 true. The court later found the prior conviction allegations true.

The court sentenced defendant to 12 years in prison for count 2; 12 years on count 1; two years on count 3; two years eight months on count 4, plus one year for the weapon enhancement; two years on count 5, a stayed (§ 654) term of two years on

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2.

count 6; 16 months on count 7; two years on count 8, a stayed (§ 654) term of two years on count 9. Defendant's total term is 35 years.

## FACTS

Defendant physically and sexually assaulted S.D., the mother of his child, on several occasions in late 2020.[2]

### *Pretrial Proceedings*

At a hearing on February 9, 2021, the prosecutor informed the court that the victim had recently told a police detective that defendant had forced her to have sex and orally copulate him. The prosecutor had not yet made a charging decision with respect to these allegations.

The prosecutor said defendant had been offered a plea deal for 14 years that afternoon. Under the offer, the prosecution would not file charges on the sex allegations. The following exchange ensued:

> "[Prosecutor 1:] [Defendant's] exposure would be significantly higher than 14 years on this case alone without even factoring into account the pending – I'm not going to say pending case. I'm going to say the allegations that [defense counsel] received last night in addition to Alameda County. I believe his exposure is upwards of – I believe 37 years?

> "[Prosecutor 2:] Yes. About 36."

Later in the hearing, defendant made an oral *Marsden*[3] motion. During the *Marsden* hearing, defense counsel stated, in defendant's presence, that defendant faced over 22 years in prison.

The court also held a *Marsden* hearing on February 23, 2021.

---

[2] The Attorney General omits elaboration of the facts of the underlying crimes and trial, positing they are immaterial to the sole issue raised on appeal. Because we agree the trial is not pertinent on the claim of error raised on appeal, and because we do not reach the issue of prejudice, we will likewise omit those facts.

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

3.

The court denied the *Marsden* motion in both instances.  At the hearings, defendant made references to "entrapment."

On May 12, 2021, the prosecution filed a complaint charging defendant with oral copulation by force, rape by force or fear, battery on a spouse or cohabitor, and assault likely to cause great bodily injury.  That case was later consolidated with the original charges against defendant, eventually resulting in the first amended information described earlier in the opinion.

**Faretta Waiver Form**

On June 11, 2021, defendant filed a *Faretta*[4] waiver that he had filled out with counsel's assistance.  The form begins, "Fill out this form if you wish to proceed in propria persona (act as your own attorney)."  The form instructs filers to initial the box for each applicable item "only if you understand and agree with it."  Filers are further advised to ask the judge if they have any questions about anything on the form.

Defendant indicated he understood his right to counsel.  He understood that if he represented himself, he would not have a lawyer to assist him in following "all the technical rules of substantive law, criminal procedure, and evidence," making pretrial motions, selecting a jury, making opening statements, cross-examining witnesses, subpoenaing witnesses, making objections, *and representing himself at sentencing* if convicted.  Defendant indicated he understood the prosecutor was an experienced trial attorney, that he would not receive special consideration or assistance from the court, and that investigating his case would be difficult since he was in custody.  Defendant also indicated he understood that the court was recommending that he not represent himself and instead accept court-appointed counsel.

---

[4] *Faretta v. California* (1975) 422 U.S. 806.  In *Faretta*, the court held defendants have the right to represent themselves if they " 'knowingly and intelligently' " waive the right to counsel.  (*Id*. at p. 835.)

The form contained the preprinted text, "I understand that I am charged with the following crime(s):" followed by this handwritten text: "burglary, stalking, DV/w strike A & D prior, rape, forceful oral copulation, battery on spouse, assault likely to produce great bodily injury w/A & D priors." Defendant observes on appeal that six counts carried strike allegations, which is not fully reflected in this text.

Defendant indicated he understood that "depending on the stage of my case, [i]f I ask to give up my pro per status and request counsel to handle my case, the Court may deny this request and I may have to proceed with trial without an attorney."

Defendant indicated on the form that he was 31 years old and did not graduate from high school. He had not represented himself previously and had no legal education.

Finally, defendant signed the form to "certify" that he had read, understood, and considered all the warnings on the form and that he "still" wanted to represent himself.

### *Faretta Hearing*

A hearing was held on June 11, 2021. At the time, trial was scheduled for June 22.

The court warned defendant, "[Y]ou understand you will not receive any special consideration from the Court? You will need to follow all the evidentiary rules and procedural rules. [¶] I can tell you I just did a murder trial with an in pro per defendant. It's not easy when you are in custody." Defendant replied, "Not to cut you off. When you're talking about a murder trial, that's neither here nor there. This is my life."

The court explained how defendant could go about obtaining an investigator by filing a request with the clerk's office.

The court accepted defendant's *Faretta* waiver and relieved the public defender. Defendant's now-former counsel represented he would provide the discovery in the case to defendant. The court advised defendant that any motions in limine would need to be filed by June 17 to be heard on June 21.

The minute order for the hearing left blank the checkbox available to reflect that the *Faretta* motion had been granted. However, the minute order stated that the public defender was "relieved" and that defendant would proceed "pro per," – which was the relief defendant had requested. The minute order also reflected that defendant was advised pursuant to *Faretta*. The minute order contains no other findings.

Trial did not go forward on June 22 as scheduled. At defendant's request, the court appointed advisory counsel for defendant on September 1, 2021.

### Motions in Limine

Defendant moved to dismiss the case for delay in prosecution. During a hearing on that motion, defendant claimed he could not have a "proper trial to prepare for because my request to get a laptop or my request to contact my PI is ignored." Defendant further claimed he could not hear through the "windows" during his in-custody meetings with his investigator. Defendant's investigator also noted that defendant was "shackled up to the chair so he cannot write notes or use a computer."

### Defendant's Request to Terminate Self-Representation

In the middle of trial, defendant said he wanted to subpoena "video from the burglary." The court told defendant he was free to do so. Defendant then said he wanted to terminate his self-representation and have an attorney to do the subpoena. The court said "not in [the] middle of trial" unless advisory counsel could proceed as trial counsel. Advisory counsel said he could not take over the case without a continuance. The court said "[t]hen that's going to be denied." The court later observed that they were "probably 80 or 90 percent done with this trial" when defendant made his request. The court said that if the case went into the foreseeable future, there was a distinct possibility the jurors would be unable to complete their service resulting in a mistrial. Advisory counsel said it would take him one or two months to get up to speed and into a position to become trial counsel. The court did not alter its denial of defendant's request to terminate self-representation.

6.

*Trial*

Appellate counsel observes defendant asked no questions of complaining witnesses, gave no closing argument, and presented no coherent defense.

## DISCUSSION

*Law*

" 'A criminal defendant has a right, under the Sixth Amendment to the federal Constitution, to conduct his own defense, provided that he knowingly and intelligently waives his Sixth Amendment right to the assistance of counsel. [Citations.] A defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' [Citation]." [Citation.] "No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation." [Citation.] Rather, "the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." [Citations.] Thus, '[a]s long as the record as a whole shows that the defendant understood the dangers of self-representation, no particular form of warning is required.' " (*People v. Burgener* (2009) 46 Cal.4th 231, 240–241.)

"We review a *Faretta* waiver de novo, examining the entire record to determine the validity of a defendant's waiver." (*People v. Morelos* (2022) 13 Cal.5th 722, 735.) Defendant bears the burden of demonstrating that his waiver of the right to counsel was invalid. (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 549.) He also bears the burden of providing "a record on appeal which affirmatively shows that there was an error below, and any uncertainty in the record must be resolved against the defendant." (*Ibid*.) Issues as to which the record is silent are resolved in favor of the judgment.[5] (*Ibid*.)

---

[5] Defendant inverts the burden by arguing that the record fails to show he made a knowing waiver. Rather, it is defendant's burden to produce a record affirmatively

7.

*Analysis*

Defendant contends that "[w]ithout an on-the-record advisement about the maximum possible sentence, the record fails to establish that [he] made a knowing and intelligent decision to waive his right to counsel and elect self-representation." As defendant observes, California courts are split on the issue of whether defendants wishing to represent themselves must always be advised of potential exposure.[6] (See *People v. Ruffin* (2017) 12 Cal.App.5th 536, 544.)

showing he did *not* make a knowing waiver. (See, e.g., *Sullivan*, *supra*, 151 Cal.App.4th 524.)

[6] Defendant urges that we read *Iowa v. Tovar* (2004) 541 U.S. 77 (*Tovar*) as requiring an advisement on the maximum punishment. (See *People v. Jackio* (2015) 236 Cal.App.4th 445; *Arrendondo v. Neven* (9th Cir. 2014) 763 F.3d 1122, 1131–1132.)

*Tovar* rejected a lower court's requirement that defendants be advised that if they represent themselves, (1) they may overlook a defense and (2) will not have an opportunity to obtain an independent opinion on whether it is wise to plead guilty. *Tovar* also observed that constitutional requirements are satisfied when the trial court informs the defendant of the nature of charges against him, the right to be counseled regarding his plea, and the range of allowable punishments attendant upon the entry of a guilty plea. (*Tovar*, *supra*, 541 U.S. at p. 81.) The parties dispute whether the Supreme Court was merely identifying one way to satisfy constitutional requirements, or instead was setting a "floor" which all advisements must meet.

We reject defendant's contention that *Tovar* established an across-the-board requirement that all defendants be advised of the "range of allowable punishments" before a waiver can be deemed knowing. While *Tovar* "affirmed that the constitutional requirement of a knowing, intelligent waiver 'is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea' [citation], the Supreme Court did *not* state that courts must give these advisements in every case." (*People v. Bush* (2017) 7 Cal.App.5th 457, 470, fn. omitted.) Moreover, the California Supreme Court has established that it is the defendant's actual understanding, not the form of court advisements, that determines whether a waiver was knowing and valid. (*People v. Burgener*, *supra*, 46 Cal.4th at pp. 240–241.) Put differently, the focus is on what the defendant *knew* and *understood*, not on what the court *said*.[6] (*U.S. v. Lopez-Osuna* (9th Cir. 2000) 242 F.3d 1191, 1199.)

Consequently, we turn to whether the absence of such an advisement requires reversal on the facts of this specific case.

Waiver of constitutional rights in the criminal context generally must be a " 'knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances.' " (*Tovar*, *supra*, 541 U.S. at p. 81.)  At the heart of the dispute before us is the broader question of what exactly a defendant must know in order for a waiver of a right to be "intelligent."

We begin with the observation that "intelligent" means a general awareness, not complete, comprehensive knowledge.  That is, a defendant need not have complete knowledge of every consideration bearing on the decision to waive or invoke a right.  Instead, " 'the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances – even though the defendant may not know the *specific detailed* consequences of invoking it." (*Tovar*, *supra*, 541 U.S. at p. 92.)  Advisements can satisfy the constitutional minimum even where the defendant lacks a " 'full and complete appreciation of all of the consequences flowing from his waiver.' " (*Ibid*.)

Applying these principles to the context of a *Faretta* waiver specifically, we conclude that a defendant must know the nature of the right to counsel and what he would be giving up by waiving that right; but does not need to necessarily to know every specific, detailed consequences that would follow if he waived the right.[7]

Under this standard, we conclude defendant's waiver here was knowing.  Defendant was fully advised of the nature of the right to counsel and what he would be

---

[7] This is not to say that a defendant cannot or should not be advised of those specific, detailed consequences.  It is only to say that the constitution does not *require* them for a waiver to be knowing.  We do believe the best approach *is* to advise a defendant of the maximum sentence he or she faces before accepting a *Faretta* waiver.  All we hold is that there is no across-the-board constitutional imperative to hold a *Faretta* waiver invalid without such an advisement.  (See *People v. Bush*, *supra*, 7 Cal.App.5th at p. 473.)

giving up by waiving that right. Specifically, he was advised that if he waived the right to counsel, he would have to "follow all the technical rules of substantive law, criminal procedure and evidence" without the assistance of a lawyer; that he would not have help making pretrial motions, selecting a jury, making an opening statement, cross-examining witnesses, subpoenaing and presenting witnesses, making objections and motions during trial, preparing and presenting jury instructions, making final arguments, making post-trial motions, and representing himself at sentencing; and that it would be difficult to contact witnesses and investigate his case.

It is true that defendant was not advised of certain eventualities that *might* follow after waiver, such as the specific punishment that could be imposed if the increased risk of conviction contemplated by a *Faretta* waiver came to fruition.[8] However, as observed above, a defendant's lack of full and complete appreciation of all of the consequences flowing from his waiver does not render the waiver unknowing. Consequently, we agree with the approach of *People v. Bush*, *supra*, 7 Cal.App.5th 457, and reject defendant's contention.

### Other Advisements

Defendant argues that even if there is no per se duty to warn about the maximum sentence, the record still fails to show a knowing and intelligent waiver of counsel. He observes that the court's oral advisements did not include some of those suggested by cases like *People v. Lopez* (1977) 71 Cal.App.3d 568.

The court could have done more at the *Faretta* hearing to reinforce the pitfalls of self-representation. The trial court did not verbally confirm with defendant that he read

---

[8] For that matter, defendant was also not advised about how a conviction would affect his ability to obtain employment (see, e.g., Lab. Code, § 432.7, subd. (m)), his ability to vote while he is in prison for the conviction(s) (see Elec. Code, § 2101, subd. (a)), or his ability to enlist in the armed forces (10 U.S.C. § 504(a).) Extending the logic of defendant's argument, presumably such advisements should also be required in every situation.

or understood the admonitions and warnings contained in the form. Nor did the trial court mention the potential consequences of a conviction (including the potential maximum term of imprisonment), explain that the prosecutor was a trained professional, or explain that defendant would waive claims of ineffective assistance of counsel by representing himself.

However, that is not the question presented on review of a claim of *Faretta* error. "Even when the trial court has failed to conduct a full and complete inquiry regarding a defendant's assertion of the right of self-representation, … courts examine the entire record to determine whether the invocation of the right of self-representation and waiver of the right to counsel was knowing and voluntary." (*People v. Marshall* (1997) 15 Cal.4th 1, 24.) Thus, it is the voluntariness of defendant's invocation – not the completeness of the court's inquiry – that guides our analysis.

Here, the entire record demonstrates defendant's waiver was in fact knowing and voluntary.

Most of the advisements defendant contends were missing are reflected in the written advisement form he filled out. Defendant filled out the form *with counsel*, initialed each advisement, and signed the form. These written advisements and defendant's acknowledgment of them were sufficient to demonstrate the waiver was knowing and voluntary.

For example, defendant argues his waiver was invalid because the trial court never orally told him that self-representation was unwise. But the form expressly advised him that it was "the advice and recommendation of the Court that [he] not represent [himself]" and to instead accept court-appointed counsel. Defendant initialed this advisement.

He similarly says the trial court did not orally advise him that representing himself might cost him a viable defense. But the form advised him that one disadvantage of not having an attorney is that he would need to follow all the rules of "*substantive law*,

11.

criminal procedure, and evidence" without the assistance of a lawyer.  Similarly, he would have to make pretrial motions, an opening statement, cross-examine witnesses, subpoena and present his own witnesses, make appropriate objections and motions during trial, prepare and present proposed jury instructions, make final argument, and make posttrial motions without the assistance of an attorney.  Defendant initialed both advisements.  By advising defendant that he would be on his own to follow substantive law and employ all the means of presenting defenses, the form *did* convey to defendant that there was a risk he might overlook, improperly pursue, or ineffectively convey his defense.

Defendant also says the court never explained he would have to face off against an experienced prosecutor with legal training.  But the form made expressly advised defendant: "I understand the case against me will be handled by a prosecutor who is an experienced trial attorney…."  Defendant initialed this advisement.

Next, he contends the court did not orally advise him that he would not receive special library privileges, that it would be difficult to communicate with his investigator, and the other difficulties created by his in-custody status.  However, the form expressly advised him:

> "I understand that because of my custodial status, it will be difficult for me to contact witnesses and investigate my case.  I understand that I will have limited access to a telephone, which will make preparations for trial more difficult, and that I will be provided no more access to the law library than any other pro per inmate."

Defendant initialed this advisement.

He observes the court did not inquire into his education level or familiarity with legal principles.  But the form had a portion for defendant to fill out his education level, which he did.  It also had a portion for defendant to fill out his legal education "if any," which defendant left blank.

12.

Moreover, at defendant's request, the trial court appointed advisory counsel. Defendant's request for advisory counsel suggests that defendant knew that he did not understand the procedural rules and required support in that respect. The record therefore compels the conclusion that defendant understood that his lack of a legal education placed him at a disadvantage in representing himself.

He complains the court did not advise him of possible defenses to his charges, especially in light of the confusion he demonstrated by referencing entrapment at prior hearings. But he offers no authority suggesting the court would be required to provide defendant such legal advice.

Defendant insists the written advisements were insufficient and that the absence of a more robust verbal advisement requires reversal, citing to *People v. Ruffin*, *supra*, 12 Cal.App.5th at pp. 548–549, which held:

> "Neither *Blair* nor *Miranda* stand for the proposition that when a defendant signs a written *Faretta* waiver form, the court need only conduct the kind of perfunctory proceeding that occurred … here, in which the court merely advised appellant that self-representation was unwise, and asked whether he initialed and signed the form and whether he had any questions. Rather, even when a waiver form is completed, the court's duty remains to ensure that the defendant's waiver of the right to counsel is knowing and voluntary. The record as a whole must demonstrate ' " 'that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.' " ' " (*Ibid*.)

While we agree a court has a duty to ensure the defendant's waiver of the right to counsel is knowing and voluntary, affirmance is nonetheless proper where the court accepts a proper advisement form that was initialed and signed by a defendant who was represented by counsel at the time. Again, the core issue is what the whole record demonstrates defendant knew and understood. Defendant can come to the requisite knowledge and understanding through various means – written or oral or both. To reverse merely because the court did not verbally repeat the written advisements defendant had just gone over with counsel and initialed would be improper.

13.

*Additional Considerations*

As noted above, at the February 9, 2021, hearing in this matter, the prosecutor summarized the new sex offense charges that would be filed against defendant. A 14-year offer was made to defendant which would have included the prosecutor's agreement not to file the sex offense charges. The prosecutors noted that defendant's maximum exposure was 36 or 37 years when considering the original charges and the sex offense charges. Defendant's counsel echoed that defendant's exposure with the new charges could be as high as 37 years and was "incredibly serious stuff." Defendant was present and actively involved in that hearing. Later in the proceedings, the trial court explained the impact of the prior strike and prior serious felony conviction if defendant were to be convicted and the priors were to be found true. Defendant's response gave no indication that he was surprised at the possible penalty. He commented that "[t]he sentencing part and the strike being doubled up … [is] the least of [his] concerns." He simply wanted to go to trial. These considerations indicate defendant understood the primary consequence of a conviction – a sentence as great or greater than the sentence imposed.

The record also makes clear that defendant intended to advance at least three defenses: first, that the burglary charges was a result of "entrapment" by S.D. by permitting him to pick up his daughter from her house then claiming that he broke in; second, that he did not actually choke S.D. which he sought to prove by cross-examining an eyewitness to the incident; and third, that he could not be convicted of stalking (presumably because he did not harass or follow S.D. or had not threatened her) because during the period of the alleged stalking, he and S.D. spent time together with their family at S.D.'s home and purchased a vehicle together with defendant's cousin. Therefore, with respect to potential defenses, the record makes clear that defendant understood the nature of the charges and potential defenses.

Further, before trial, defendant made clear that he understood that he was "dealing with a professional prosecution team." The record therefore supports the finding that

14.

defendant understood that he faced a disadvantage in representing himself because he faced an experienced prosecutorial team.

*Conclusion*

The record demonstrates that defendant understood the primary dangers and disadvantages of self-representation and nevertheless sought to represent himself.  The *Faretta* waiver was therefore knowing and voluntary.

## DISPOSITION

The judgment is affirmed.


                                                            POOCHIGIAN, Acting P. J.

I CONCUR:


SNAUFFER, J.

15.

FRANSON, J. Concurring.

I concur with the ultimate conclusion by the majority that the judgment is not reversible due to an insufficient *Faretta*[1] waiver. However, I write separately to explain that the trial court's admonishment was insufficient, and that I would not find a waiver knowing and intelligent based exclusively on a *Faretta* waiver form. Nevertheless, considering the record as a whole, the judgment must be affirmed because defendant was aware of the dangers and disadvantages of self-representation.

As a threshold matter, *Faretta*, *supra*, 422 U.S. at page 835, *Iowa v. Tovar* (2004) 541 U.S. 77, 89, and *People v. Burgener* (2009) 46 Cal.4th 231, 240–241 (*Burgener*), all impose on the trial court a duty and obligation to advise a defendant of the dangers and disadvantages of self-representation and to make sure the defendant understands those dangers and disadvantages.[2] The record must establish that a defendant " 'knows what he is doing and his choice is made with eyes open.' " (*Faretta*, at p. 835.)

However, "[n]o particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case." (*People v. Koontz* (2002) 27 Cal.4th 1041, 1070.) Courts nevertheless have suggested certain considerations that ought to be discussed with the defendant: that self-representation is

---

[1] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[2] The majority expressed its disagreement with *People v. Ruffin* (2017) 12 Cal.App.5th 536 at pages 548–549, regarding whether a trial court must conduct more than a "perfunctory proceeding" to advise a defendant of the dangers and disadvantages of self-representation. The majority concludes that a written waiver can be sufficient if the defendant is represented by counsel at the time of the waiver. I agree with *Ruffin* insofar as it requires more than a signed *Faretta* wavier form to find a waiver of the right to counsel to be knowing and intelligent.

unwise and usually detrimental; that defendant will not receive special treatment by the court and will be expected to abide by all procedural and evidentiary rules; that the prosecutor will be a trained professional; that defendant will not be given additional library privileges or time to prepare; and that defendant will be waiving appellate claims of ineffective assistance of counsel. (*Id*. at p. 1070–1071.) Courts have also suggested "that trial judges inquire into the defendant's education and familiarity with legal procedures, suggesting a psychiatric examination in questionable cases." (*Id*. at p. 1071.) Courts have "further suggested probing the defendant's understanding of the alternative to self-representation, i.e., the right to counsel, including court-appointed counsel at no cost to the defendant, and exploring the nature of the proceedings, potential defenses and potential punishments." (*Id*. at p. 1071.)

"On appeal, we examine de novo the whole record[, including proceedings after the invocation of the right to self-representation]—not merely the transcript of the hearing on the *Faretta* motion itself—to determine the validity of the defendant's waiver of the right to counsel." (*People v. Koontz*, *supra*, 27 Cal.4th at p. 1070; *People v. Conners* (2008) 168 Cal.App.4th 443, 454.) We must draw every reasonable inference against waiver of a right to an attorney. (*People v. Marshall* (1997) 15 Cal.4th 1, 20).

In this case, the trial court failed its duty to adequately advise defendant of the dangers and disadvantages of self-representation.[3] Nevertheless, the record reflects that defendant understood those dangers and disadvantages and defendant therefore did knowingly and intelligently waive his right to counsel. (*Burgener*, *supra*, 46 Cal.4th at p. 241.)

---

[3] I would note that the *Faretta* hearing in this case came in the early days of the COVID-19 pandemic and was held via video conference while the medium was still new.

Here, the trial court understood its duty.[4]  At the June 11, 2021 *Faretta* hearing, the court told defendant:  "My job is to advise you of any pitfalls there may be with respect to representing yourself.  I'm going through the form you signed, and I want to make sure you understand that."  He later added: "My job is to tell you what you're signing. Do you understand that?  I want to make sure you know you have to follow the same rules everybody else does."  However, the court did not review the *Faretta* form with defendant.

Instead, the trial court told defendant (1) he would "not receive any special consideration from the [c]ourt"; (2) he would "need to follow all the evidentiary rules and procedural rules"; (3) it was "not easy" to defend himself "while … in custody"; it is "very difficult"; (4) outbursts in the courtroom would not go well for him; (5) he would need help obtaining civilian clothing for trial; (6) how to obtain an investigator; (7) he would have to file motions on his own behalf; and (8) he would "need to figure out what … remedies" he had if subpoenas were not complied with.

At no point did the trial court ask defendant if he read or understood the admonitions and warnings contained in the form.  Nor did the trial court mention the potential consequences of a conviction (including the potential maximum term of imprisonment), discuss defendant's potential defenses, explain that the prosecutor was a trained professional, or explain that defendant would waive claims of ineffective assistance of counsel by representing himself.  Despite the trial court's failures, reviewing the record as a whole, I must conclude, as the discussion at pages 13 through 15 of the

---

**4** Every trial judge in California receives *California Judges Benchguides* (Benchguide), prepared by the Center for Judicial Education and Research (CJER) as part of their ongoing legal education.  Benchguide 54: Right to Counsel Issues, first published in 1998, and periodically revised, addresses *Faretta* requests, and includes suggested scripts for the trial court to examine defendants requestioning pro per status.  These scripts, meant to be informal, thorough, and frank, contain each of the admonitions contained in the subject *Faretta* waiver form, and more.

majority opinion demonstrates, that defendant understood the dangers and pitfalls of self-representation.  Therefore, the *Faretta* waiver was knowing and voluntary.  For that reason, I concur in the judgment.


FRANSON, J.